## THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF UTICA *against* HILLARD.

ASSUMPSIT on a promissory note, by the bank as endorsee, *against* the defendant as endorser. The note was made by one Samuel Jones, dated August 24th, 1821, for 2000 dollars, payable *to* the defendant, or order, at the Utica Bank, ninety days after date, and discounted by the plaintiffs.

The cause was tried at the Oneida Circuit, October 4th, 1824, before BETTS, C. Judge.

The signatures of the maker and endorser being admitted, the plaintiffs called Thomas Colling as a witness, who proved the usual demand and notice.

The defendant's counsel then stated their defence to be, that the note was usurious; and proceeded to the cross-examination of Colling, who testified, that he had been clerk of the Utica Bank for 10 or 12 years; and that he had been

The clerk in a bank is not bound to produce its books, on a *subpœna duces tecum*.

Where it appeared that a bank had kept books or memoranda, in which they entered the time, manner and terms of discounting notes; *held*, on a suit by the bank against an endorser, upon discount, that it was not competent for him to show the custom of the bank, under the direction of the cashier, to take an usurious discount in all cases, from the creation of the bank till after the particular note had been discounted, without first showing that notice had been given to the bank to produce the books and memoranda on the trial, which had not been complied with.

The general rule, as to the competency of witnesses, is, that every person not interested in the event of the suit, nor incapacitated by his religious tenets, nor by the conviction of an infamous crime, is a competent witness. All other circumstances affect his credit only.

The maker, or other person, whose name appears upon a promissory note, is, within this rule, a competent witness, to show that it was void in its creation for usury, or other cause.

served with a *subpœna duces tecum* to produce the books of the bank, in which were entered the time and manner of the discount of the note in question; and all the memoranda make by him or the plaintiffs respecting the discount or manner of discounting that note, or any notes of which it was a renewal. He was then called upon by the defendant's counsel to produce the book, or books, memoranda, &c. pursuant to the subpœna; to which he answered, that he had not brought them. The defendant's counsel then requested a delay, till the books and papers could be produced from the bank; whereupon the counsel for the plaintiff objected, that the witness was not bound to produce them, upon the ground that he was not the proper officer to be called upon for that purpose; and they objected to the delay. The Judge sustained the objection, holding that the president or cashier should have been subpœnaed; and refused the delay requested; to which the defendant's counsel excepted.

Colling then testified, that, from marks made upon the note by himself, he knew that it was discounted in renewal of a former note, for the like amount then in the bank; and that, as a clerk of the bank, it was made his duty to compute the amount of interest received on notes discounted at the bank; but that he had not examined the books of the bank, to see what sum was received by the plaintiffs for discount upon this note in particular; nor did he know the amount; nor did he know or recollect whether he did make the calculation of the amount of discount in that particular instance; as he was frequently absent from the bank; and, in such cases, it was done by one of the other clerks.

The defendant's counsel then offered to prove by the witness, that, in pursuance of general directions from the cashier of the bank, the interest received by it, upon all notes discounted at the bank, from its creation down to several months after discounting the note in question, had been computed by the standard of 30 days to a month, and 360 days to the year, without a single exception; and that, by this standard, the interest received at the time of discounting the note, would amount to $36 18. To this evidence the plaintiff's counsel objected; and it was rejected by the

Judge, on the ground that a general rule, practiced in other cases, was not evidence of the amount of discount in this particular case; and the defendant's counsel excepted.

They then offered Jones, the maker, as a witness, who was objected to by the plaintiff's counsel, as interested. He swore, on his *voir dire*, that he and the defendant had been joint endorsers of a promissory note, made by one Moryan, for $2000, which the plaintiffs had discounted for Moryan's benefit; that it had been from time to time renewed; that it was an accommodation note; and, on failure of Moryan, it was agreed between the witness and the defendant, that the witness should become maker, and the defendant endorser of the note in question, in renewal of Moryan's note; and that each should pay one-half of the former, which was made and endorsed accordingly; and that he had since paid the plaintiffs $1000, which were endorsed on the note in question. Whether this was in full of his half, he did not know; and this suit was brought by the plaintiffs, at his request, he having agreed to pay them the costs, if they should fail to recover them of the defendant. Upon this evidence, the Judge rejected the witness as incompetent, and the defendant's counsel excepted.

Verdict for the plaintiff, for $1331 84, damages.

*J. A. Spencer*, moved for a new trial; and insisted,

1. That Colling was bound to produce the books, &c. under the *subpœna duces tecum*. The president pays no attention to the *minutiæ* of business carried on in a bank, nor is the cashier exclusively concerned in these. It is not necessary to inquire, whether the clerk had a right to carry these papers abroad, on a private request. He was certainly bound to produce them on the demand of the law. They are, for the purposes of evidence, the papers of the Court; and the cashier could not control them, when required by the Court. The book-keeper of a merchant may be called on by subpœna, to produce the books of his principal. He has the possession and care of them, as bailee and agent. So of this clerk. The books being in his possession and power, were subject to the subpœna.

2. The general direction of the cashier, and the practice of the bank, were, at least, competent evidence for the jury. Whether they would have been conclusive or satisfactory, is not the question. The evidence went to show, that an usurious discount had been taken in all cases, this being directed by the proper officer of the bank, whose directions, it is to be presumed, were obeyed. The whole includes all its parts. If taken in every instance, the proposition includes the particular one under consideration.

3. Jones' interest was in favor of the plaintiffs. He was, therefore, the best possible witness for the defendant, by whom he was offered. At any rate, his interest, as to costs, was of his own creation, without our consent. He could not, in this way, deprive us of his testimony. It is like the familiar case of a wager, by a witness, upon the event of a suit, which never is allowed to disqualify him, unless made with the consent of the party who offers him. The witness was accountable to the bank, as maker, at all events, if we look merely to the face of the note; and on the bank recovering against the defendant, the witness was accountable, as maker, to the defendant. This produces a balance of interest. The record in the present cause, if the defendant succeeds, will not be evidence, to protect the witness against the bank. That is the criterion of interest. But when we look to the agreement between these parties, which was to share half and half, in the payment of the $2000; and when we see that the witness had paid his share, it produes a strong interest, preponderating against us. That the witness had an actual feeling in favor of the plaintiff's success, is evident, from his having agreed to pay the costs, upon their failure, to collect of the defendant.

*J. Platt*, contra. 1. The bank being a party, their officers were not compellable to produce the books in any way. A party may always withhold a paper, and put his adversary to prove it the best way he can.

2. Colling did not know the amount of discount. He was often absent; and did not know who made the calculation upon this particular note. Then, he is asked, as to

tne custom which prevailed at the bank to take usury. More than the bare statement of such a proposition, is not necessary, to show its fallacy.

3. Jones was interested, in two points of view. His relation to the parties, as maker, was enough ; and he is interested at least to the amount of the costs, which the defendant could recover over against him, in the event of the plaintiff's succeeding in this suit. The suit is on a mere accommodation endorsement. This will always be intended as to an endorser, till the contrary is shown. But the agreement by the witness with the defendant, to pay one-half the $2000 note, creates another interest which should exclude him. The recovery in this suit, would be evidence in favor of the defendant, in a suit against the witness for contribution. It would be essential testimony, and in itself conclusive, to a certain extent, in such a suit. (Phil. Ev. 43, 4, 48. 3 T. R. 32, 6. 4 East, 582. 1 Str. 632. Cowp. 621.) If we are guided by the face of the paper, the interest is not balanced. The witness is interested to prevent a recovery against the defendant, to whom, in that event, he must pay not only principal, but the costs which we recover. (*Pierce* v. *Butler*, 14 Mass. Rep. 303, 312. *Jones* v. *Brooke*, 4 Taunt. 464.)

*Spencer*, in reply. Colling connected himself with the note, by his marks upon it. He did the business ; and it was certainly competent for him to say that he acted in reference to the custom of the bank, and the direction of the cashier. Could this chain of circumstances leave any doubt of the usury ?

The note was not made for the accommodation of the witness. We suppose this would not be intended ; but must be shown affirmatively ; and that there are, therefore, no costs in question, between the defendant and the witness. The maker is never liable to the endorser for the costs of a suit, on a note given in the ordinary course of business. (9 John. Rep. 131.) But it is enough, that this matter was disposed of by arrangement between them ; each being liable for one-half. Costs could not be recov-

ered in the face of this agreement. But if otherwise, the witness was liable to the plaintiffs for their costs by express agreement. Go as this cause will, it seems he must pay costs, according to the ground taken on the other side. The doctrine of contribution goes on a joint undertaking ; and does not apply between maker and endorser. In this view, the recovery here, against the defendant, would not be necessary, or even admissible, against the witness, in an action over. The note, and having taken it up, would be enough in themselves. The recovery would be no proof that a farthing had been contributed. But it is clear that not one shilling ever can be recovered of the witness by the defendant in any event. The witness has done all that he agreed to do ; that was, to pay one-half the note.

*Curia*, per SAVAGE, Ch. Justice. · The obligation of Colling to produce the books, upon the *duces tecum*, depends on the question, whether they were in his possession and and under his control. He was the mere clerk of the plaintiffs ; and, in that character, had no such property, in, or possession of the books, as imposed the obligation to bring them. They were under the control of the cashier, who might forbid their removal, or place them beyond the reach of the witness.

It does not appear that the general direction from the cashier, and the custom of the bank, were the best evidence in the power of the defendant. The books and *memoranda* themselves might have been produced on notice for that purpose to the plaintiffs. Had this notice been given, and not complied with, I incline to think the inferior evidence would have been, *prima facie*, sufficient. It would then be fair to presume, that the witness could not state the contents of the books in relation to this note, because he had been careful not to know them, or refresh his memory on the subject. As the matter stood, I think the Judge decided correctly.

Was Jones, the maker, a competent witness ? It is contended that he was interested in the costs. Originally, both the witness and defendant were endorsers and sureties on

paper of Moryan, upon whose failure, they substituted the note in question, agreeing to share the loss equally between them. The witness, it seems, had fulfilled his part of the arrangement, or nearly so; and this suit was brought at his instance, and on his undertaking to indemnify the plaintiffs against the costs, to collect the payment of the residue from the defendant. Admitting Jones' liability to the defendant for a part of these costs, he is, on the other hand, liable to the bank for the whole, in case of their failure to collect of the defendant. His interest is, therefore, neutralized.

Jones was, then, a competent witness, unless he is to be excluded on the ground of policy. Before *Walton* v. *Shelly*, (1 T. R. 296, A. D. 1786,) the rule and its exceptions were, that every person was a competent witness who was not interested in the event of the cause, rendered infamous by crime, or excluded for infidelity. By that case, a new exception was introduced, " that no party, who has signed a paper or deed, shall ever be permitted to give testimony to invalidate that instrument, which he hath so signed." This exception, continued a prevailing one, in England, though not universally so, till it was overruled in *Jordaine* v. *Lashbrooke*, (7 T. R. 597, 601, A. D. 1798;) where the reasoning in *Walton* v. *Shelly*, was considered, and the ancient rule re-established; Ashurst, J. still adhering to the opinion he had given in *Walton* v. *Shelly*. He was the only Judge on the bench, in 1798, who had also been there in 1786. The doctrine advanced by Ld. Kenyon, in the latter case, is, " that when a witness is infamous, and the record of his conviction is produced, or when he is interested in the event of the cause, he cannot be received: but to carry the rule beyond that, would be extending it farther than policy, morality, or the interests of the public require." This has ever since been the law in England. But this Court, in *Winton* v. *Saidler*, (3 John. Cas. 185, A. D. 1802,) adopted *Walton* v. *Shelly*, which has also been adopted in most of the United States. In *Winton* v. *Saidler*, the question is ably discussed by the Judges, who delivered their opinions; and the decision made by a bare majority of the Court.

Without intending to enter at large into the arguments on this subject, I would barely remark, that those who have maintained the doctrines lying on each side of the question, have been influenced by the arguments of Ld. Mansfield, on the one hand, and Ld. Kenyon on the other. The former seems to found his argument on a maxim of the civil law : "*nemo allegans suam turpitudinem est audiendus ;*" applying it in this way, every person who has signed an instrument, has thereby declared that he knows of no objection to it ; and should not afterwards be permitted to contradict this declaration. The allegation of the frauds which might thus be practiced, is met by Ld. Kenyon, with supposing that greater ones may be practiced on parties and strangers, by getting the names of all who may be witnesses on fraudulent paper ; and then the guilty will stand entrenched in the forms of law. Supposing the danger which we are to apprehend on the score of fraud, to be equally great on the one hand as the other, I can see no good reason for refusing to parties who may be innocent, the benefit of disclosing the whole truth. I cannot believe that justice will be promoted or the morals of the community improved, by permitting those guilty of frauds, to protect themselves from the testimony of the only witnesses who are supposed to have a knowledge of the facts.

This Court has been gradually receding from the decision in *Walton* v. *Shelly ;* and I am free to declare, that I entirely deny the propriety of the exception adopted in that case ; and consider the old rule, with its ancient exceptions, the only correct one.(*a*) That rule is, that every person, not interested in the event of the suit, nor incapacitated by his religious tenets, nor by the conviction of an infamous crime, is a competent witness. All other circumstances, affect his credit only.

In my opinion, the Judge erred in excluding the witness ; and a new trial should be granted on that ground, with costs, to abide the event of the suit.

New trial granted.

(*a*) See *Stafford* v. *Rice,* ante, 23.