## RICHARDS *v.* MARSHMAN.

Only that portion of a contract is void, which promises more interest than is authorized by the interest law of 1839.

On a note made under that law to draw thirty-three per cent. interest, twenty per cent. interest can be enforced.

The payee of a note, which he indorsed to the holder, is a competent witness to prove usurious interest.

## *Error to Van Buren District Court.*

*Opinion by* Greene, J.    Assumpsit on four promissory notes made by the defendant and others, payable to Silas Tolman and by him indorsed and delivered to Seth Richards.    The notes are dated Sept. 27th, 1842, payable on or before the 28th day of June, 1843; and drawn to bear interest at the rate of twenty per cent. per annum after due till paid.    Pleas, non assumpsit and usury.

On the trial, there was evidence given tending to sustain the plea of usury, and to show that Osse Tolman, one of the makers of the notes, borrowed money of the plaintiff and gave him surety notes drawing interest at the rate of thirty-three per cent; and that the notes sued on were given for the principal, and illegal interest of those notes, for the purpose of renewing them.

The court instructed the jury, that if one promises to pay another a sum of money including a greater rate of interest than is authorized by law, such promise would be void; and the case would stand as if no such promise had been made by the parties; but the law would then imply a promise to repay the consideration with *six* per cent. interest.    The jury accordingly found for the plaintiff, on such implied promise.

This instruction of the court, is one of the errors urged.

The interest act of 1839, p. 276, was in force at the time the notes in question were given, and it authorized an agreement in writing to pay interest at a higher rate than six per cent; but providing that in no event, such rate of interest shall exceed the value of twenty dollars for the forbearance of one hundred for one year.    The penalty provided is, that the usurious part of any such contract, and twenty-five per centum interest thereon, shall be forfeited, to be recovered before any court of competent jurisdiction; and to be paid into the treasury of the county, wherein the same may be prosecuted.

It is not pretended, that the present proceeding is a pro-

secution to enforce a penalty for usury; but it is insisted, that the court below properly charged a usurious contract to be void in all its bearings. Such a decision would be correct in England, and in most of our own states, where the enactments on that subject, declare such contracts usurious and void. But the validity of this contract, must be tested by the usury act of our state, which was in force at the time it was made. It does not pronounce such contracts void, but merely forbids a greater rate of interest than twenty per centum, and provides that any excess, &c., shall be forfeited on proper prosecution. We regard it as the clear intention of the law, to leave all such contracts in full force between the parties, except the usurious portion. The intention of the contracting parties should then, be enforced so far as lawfully and clearly traceable to the full extent of its legal limitation. There can be no question, but that there was an intention to pay at least twenty per cent. interest, and as the law authorized that rate of interest by agreement, we see no sound reason why the contract should not be enforced to that extent; and we are therefore of the opinion that the court below erred in deciding that the entire contract is void, merely because one portion of it is forbidden by law; although that portion is obviously divisible, and under our statute has no impairing effect upon the rest.

The legislative intention to preserve the validity of all such contracts, except the usurious portion of the interest, is fully evinced by the language of the act, by the forfeiture designated, and by the manner the prevailing legislation, is avoided, which declares such contracts void.

It may well be assumed, that contracts which are *malum prohibitum* should not have vitality imparted to them by courts of justice; and that such tribunals should not recognize a remedy which the law does not confer; but we cannot perceive that this familiar rule is in any respect departed from by our decision in this case. We follow, what we believe to be the clear intention of the statute, in recognizing the contract as valid, so far as its legal fea-

tures and the legal intention of the parties can be plainly traced. In doing this, we believe no violence is done to the doctrine held in *The Bank of the U. S.* v. *Owens*, 2 Peters 527, and the cases therein cited.

In Ohio, under a statute more prohibitory than the one under which the notes in question were given, it has been decided that usury avoids the contract only to the extent of the illegal interest. *McLean* v. *Lafayette Bank*, 3 McLean 587. In *Lafayette Ben. So.* v. *Lewis*, 7 Ohio Part 1, 80, it was held that when a contract is for more than six per centum, the principal may be recovered with six per centum interest, which is the full extent authorized by statute.

2. It is also claimed as error, that the court overruled the objection of the plaintiff below, to the introduction of Silas Tolman the payee and indorser of the notes, as a witness to prove the defence of usury.

As the question is not raised, we will not advert to the immateriality of the testimony to prove usury, which was fully established by the face of the notes sued, but briefly state our decision as to the competency of the witness.

The governing rule is, that a witness is competent, unless he is infamous or interested in the event of the suit. To this general rule, policy has interposed a few exceptions, such as excluding the testimony of husband and wife for or against the other, and of admitting a man robbed though interested, to testify against others for the robbery, and the like. These exceptions are admitted to preserve domestic harmony, and public security. But how can these motives or even the appeal to commercial convenience, be applicable to the exclusion of a witness whose name appears upon negotiable paper?

Were we to follow the current of authority emanating from many of our older states, as cited by counsel for the plaintiff in error, we could not do otherwise than decide, that the indorser is not a competent witness to invalidate a note. But more recent decisions, following a more en-

Richards *v.* Marshman.

lightened and progressive policy, have held the contrary doctrine.

The first adjudged cases in American courts, appear to have been predicated upon *Walton* v. *Shelley*, 1 T. R. 296 made A. D. 1786. This seems to be the first reported case in England upon this question, and is founded upon a maxim of the civil law, that "*nemo allegaris suam turpitudinem est audiendus*," and from this sprang the supposed policy, that no party who has by his signature given credit to a negotiable instrument, should be permitted to defeat it by his testimony. That inconvenience and even fraud may sometimes result from such a practice, must be conceded; but it should be as readily conceded, that even greater inconvenience and fraud may be practiced on parties and strangers, by getting to fraudulent paper the names of all who might be witnesses to the transaction. No rule of evidence or form of law should extend such a shield to the guilty. Under this view of public policy, and the prevailing rule of competency, the case of *Walton* v. *Shelley*, was overruled in *Jordaine* v. *Lashbrook*, 7 T. R. 601; and the payer who was also indorser of the bill was determined a competent witness to prove that the bill was drawn in London instead of Hamburgh, as it purported, and was therefore void for want of a stamp. And this has ever since prevailed as the recognized rule in England. *Rich* v. *Topping*, Peak N. P. R. 224; 1 Esp. N. P. C. 176; *Brand* v. *Ackerman*, 5 Esp. 119; *Kent* v. *Lowden*, 1 Camp. 177; Peake Ev. 4th Ed., 255; 2 Stark. Ev. 298. And in 1 Phil. Ev. 5 Am. Ed. 43, the author in commenting on the case of *Walton* v. *Shelley*, remarks that it appears to have been the first decision in support of such a rule, and that the contrary is now fully established. The promptness with which the English courts have overruled their erroneous decision in that case, is truly commendable; but we are constrained to observe, that exalted American courts have not pursued the same enlightened policy. Having once recognized as law, the unsound doctrine of *Walton* v. *Shelley*, they appear to adhere to it

with remarkable pertinacity. This has especially charac-
terized the decisions in Massachusetts on that question.
As early as 1807, *Walton* v. *Shelley* was recognized in the
case of *Warner* v. *Merry*, 3 Mass. 27, and it was then de-
cided, that a party to a negotiable security, shall not be
permitted to testify that at the time he became a party, it
was void. And so the court continued to decide in *Park-
er* v. *Lovejoy*, 3 Mass. 565; *Churchill* v. *Sutter*, 4 *ib*. 156;
*Manning* v. *Wheatland*, 10 *ib*. 502; *Butler* v. *Damen*, 15
*ib*. 223; *Packard* v. *Richardson*, 17 *ib*. 122. But in the
case of *Knight* v. *Putnam*, 3 Pick. 184, the court ques-
tions the correctness of the decision in the case of *Man-
ning* v. *Wheatland*. The opinion remarks, that "the au-
thority of that case has been questioned, and the objec-
tion to the doctrine as there laid down, is entitled to great
consideration. The witness was held to be incompetent,
not because he was interested, but on the ground of legal
policy which will not permit one, who has transferred a
negotiable security as valid, to invalidate it by his testi-
mony." And indeed the principle recognized in *Fox* v.
*Whitney*, 16 Mass. 118, is by no means consistent with
former decisions in that state. It was held that a promi-
sor on the note as surety, the paper not having been nego-
tiated, was a competent witness to prove that it was given
for a usurious consideration.

Afterward in *Van Shaack* v. *Stafford*, 12 Pick. 565,
the maker of the note, being released, was *held* to be a
competent person *to prove usury in an action against the
payee. And still in the case of *Thayer* v. *Crossman*, 1
Metcalf 416, the old doctrine of excluding a party to a note
was again confirmed, but under greater limits and quali-
fications than had been previously recognized. Shaw C.
J. in an able opinion and general review of authorities,
considers the rule settled for that commonwealth, by a
course of decisions too direct and uniform to be drawn in
question, but concedes the necessity of curtailing its ex-
tent and application. Though the rule of *Walton* v. *Shel-
ley*, has been repeatedly overruled by the court which adopt-

ed it, and its error triumphantly exposed, still it is recognized in Massachusetts as in force, but limited in its application to a negotiable security, indorsed and put in circulation in the usual course of business; and as not applying to notes overdue or otherwise dishonored. And this rule appears to obtain to an extent more or less limited in Pennsylvania. *Bond* v. *Cochran,* 4 S. & R. 397; *Griffith* v. *Riford,* 1 Rawle 196: in Maine, *Drering* v. *Lawlitel,* 4 Greenl. 191; *Chandler* v. *Morton,* 5 *ib.* 374; and also by the federal supreme court, *Bk. of the Metropolis* v. *Jones,* 8 Pet. 12.

But in New York, though the rule was adopted in 1802, by a majority of the court in *Winton* v. *Saidler,* 3 John. Cas. 185, it was soon after overruled, and has never since been recognized in that state. *Stafford* v. *Rice,* 5 Cow. 23. It is in that case remarked, *per totam curiam* that *Winton* v. *Saidler* is not law, not having been acted upon for many years, and having been repeatedly overruled; and that under the later decisions, a witness, whose name appears upon negotiable paper, may be received to prove usury in its inception. See also *Bank of Utica* v. *Hillard,* 5 Cow. 153; *Williams* v. *Walbridge,* 3 Wend. 415.

The rule of *Walton* v. *Shelley* has also been rejected, in Connecticut, *Townsend* v. *Bush,* 1 Conn. 260; also in Vermont, *Nichols* v. *Holgate,* 2 Aik. 140; in New Jersey, *Freeman* v. *Butlin,* 2 Harrison 192; in Maryland, *Ringgold* v. *Tyson,* 3 Har. & Johns. 172; *Hunt* v. *Edward,* 4 *ib.* 283; in Virginia, *Taylor* v. *Beck,* 3 Rand. 316; *Caldwell* v. *McCourtney,* 2 Gratt. 187; in Kentucky, *Gorham* v. *Carroll,* 3 Litt. 221; in N. Carolina, *Guy* v. *Hall,* Murphy 151; in S. Carolina, *Knight* v. *Packard,* 3 M'C. 71; in Georgia, *Slack* v. *Moss,* Dudley 161; in Tenn., *Stump* v. *Napier,* 2 Yerg. 35; and also in Alabama, *Manning* v. *Manning,* 8 Ala. 138. In this case, Ormond, J. observes, that the doctrine first asserted in *Walton* v. *Shelley,* has been long exploded in England, and never was recognized by that court; but that the opposite opinion had been as-

serted in numerous cases.  1 Stew. 199; 9 Porter 225, ib.
406; 3 Ala. 93; 5 ib. 385.

We must conclude then, that in the case at bar, aside
from the immaterial character of the evidence, the court
below very properly admitted the witness Tolman to tes-
tify as to the original invalidity of the notes, but as the
jury were improperly instructed as to the effect of usury
upon the contract, the judgment must be reversed.

Judgment reversed.

*J. H. Cowles*, for plaintiff in error.

*Wright & Knapp*, for defendant.