Mr. Chief Justice Johnson delivered the opinion of the Court. The question of Byrd’s eompetency as a witness is the only matter presented by the record in this case. The counsel for the appellee relies upon the case of Walton et al. v. Shelby, 1 Term Rep., and others subsequently decided but based upon the authority of that case. The Supreme Court of the United States, said in the case of The United States v. Leffler. (11 Pet. R. 93,) “The first (objection) is that the witness should not have been received because his evidence went to prove,his own turpitude. And in support of this objection, we were referred, in the first place, to the case of Walton et al. v. Shelby, 1 Term Rep. 296. It was indeed decided in that case that a party who had signed any instrument or security (without limitation as to the character of the instrument) should not be permitted to give evidence to invalidate it. It was said that every man who is a party to an instrument gives credit to it; that it was of consequence to mankind that no person should hang out false colors to deceive them, by first affixing his signature to a paper and then giving testimony to invalidate it. And the civil law maxim, nemo allegans suam turpitudinem audiendus est, was relied on. This case was followed a few years after by that of Bent v. Baker, 3 Term R. 27, in which it was said that the rule must be confined to negotiable instruments, and in 1798, the case of Jordaine v. Ashbrook, 7 Term Rep. 661, overruled the case of Walton v. Shelby, even in regard to them by deciding that in an action by an indorsee of a bill of exchange against the acceptor, the latter may call the payee as a witness to prove that the bill was void in its creation. And such is the doctrine which has since been held in England. In this court in the case of Bank of the United States v. Dunn, 6 Pet. 51, it was decided that no man who was a party to a negotiable instrument, should be permitted by his own testimony to invalidate it. The principle thus settled by this court goes to the exclusion of such evidence only in regard to negotiable instruments, upon the ground of the currency given to them by the name of the witness called to impeach their validity; and does not extend to any other cases, to which that reasoning does not apply; the case of The Bank v. Dunn, then would be sufficient to defeat the objection which has been made to the witness although he executed the bond, and although it was the bond of a public officer. The second objection is that the witness was directly interested in the event of the suit. This objection may be viewed in two aspects : 1st, as it respects the interest of the witness arising from his liability to his co-obligors, who were his sureties. 2dly, As it respects his interest as being, as it is contended, a party upon the record, and as such liable to a joint judgment with the other defendants, Jacob and Isaac Leffler. In relation to the first of these aspects, it is certainly true, that in general a principal obligor cannot be a witness for his co-obligors, who are his sureties in the bond sued upon even although he be not a party; this is well settled both upon principle and authority: amongst other cases it was so decided by this court in the case of Riddle v. Moss, 7 Cranch 200; upon the plain ground that he is liable to his sureties for costs in case judgment should be rendered against him. Now although that was once the position of this witness, yet it was not such at the time he was examined; for it appears by the bill of exceptions that, before his examination, his sureties had executed a release in the most ample form, of all claim against him arising out of their relation to him as sureties upon the bond, embracing every thing which could be recovered against them, including costs. There is then no interest in the witness in the event of the cause arising from his supposed liability over to his sureties, the defendants.” This court, in the case of Tucker v. Wilamowicz, 3 Eng. Rep. 166, said, “without going into a discussion of the authorities cited by counsel, from a careful examination of them, we are prepared to adopt the rule as laid down by the Supreme Court of New York, in the case of the Bank of Utica v. Hillard, 5 Cow. 153, “that every person not interested in the event of the suit, nor incapacitated -by his religious tenets, nor by the commission of an infamous crime, is a competent witness. All other circumstances affect his- credit only.” We may say with the Supreme Judicial Court of Massachusetts, in the case of Fox et al., ad. v. Whitney's admrs., 16 Mass. Rep. 120, that even admitting the doctrine of Walton v. Shelby, as narrowed down by later decisions, to be still received as sound law, yet the principles, on which that decision rests, do not apply to the present case, because the instrument in suit, although negotiable in form, was not in fact negotiated, but remains in the hands of the original promisee, and the suit is now brought by him. No currency has been given to the bond, and there is no innocent indorsee to be prejudiced. -The contest is between the original parties to the illegal bargain; and the competency of the witness must depend altogether upon the question, whether he is interested in the event of the suit or not. There can be no pretence that the witness, Byrd, is a party to this suit and that upon that ground he is incompetent. He is not named as a party in any part of the pleadings. He could not have made a motion in the cause. He had no day in court. The suit was simply one against the appellant as executor of Charles Caldwell; one of the sureties in the bond. He cannot be excluded therefore as a party of record. The next question, is, whether he is incompetent on account of interest in the event of the suit. It is in proof that the appellee had a regular and valid judgment against Byrd for the full amount of the bond now in suit, that said judgment was recovered in a separate suit against him, and that the same was in full force and unreversed at the time he was introduced as a witness, and it further appeared, that the appellant as executor of the said Charles Caldwell, had executed and delivered to said Byrd a full release and discharge from and against all and every suit, claim or demand, of any and every sort, nature or description, of, for, and in respect of the said bond, and from and against, all recourse by or in favor of said estate of said Charles Caldwell, deceased, for the sum of money therein expressed, and interest or any part thereof upon and against said Byrd, his heirs or administrators 5 then or at any time thereafter. We consider it clear that under the circumstances, Byrd could not be said to be in any manner concerned or interested in any judgment that the appellee might recover against the appellant, so far as the principal and interest of the bond were involved as in case of such recovery against his security and payment by him, he could only be required to refund, and he could be required to do the same thing in effect without such judgment, by payment of the judgment against himself, in case that he possessed the means of such payment. To him it would not be a matter of consequence whether he should be bound for a judgment to the appellee or to one of his sureties in case the amount of each should be the same. The case would be altogether different as to the costs that might be recovered against the surety. This amount could not have been included in the judgment against Byrd, and consequently must be regarded as a separate and distinct matter from it. In that sum, whatever it might be, the witness would consequently have an interest, and as a matter of course, he would to that extent desire a failure of the suit. But it is objected that the appellant, in his capacity of executor, had no power to make the release so as to remove the interest of the principle obligor. This defect of power is said to rest upon the fact that such an act would subject the executor to an action for a devastavit. Suppose it to be conceded that the legal effect would be to subject the executor to an action for the full amount released, how could this affect the question of power? If he should feel disposed to do an act which would subject him to^amages, it would most unquestionably be his right to do so, and having taken the responsibility, he could not reasonably complain if the law should be meted out upon him. But how this could operate to affect his power to do the act, it would be difficult to conceive. We entertain no doubt therefore that, whether the consequence of the act be to subject him to an action for a devastavit or not, is not at all material so far as as the question of power is concerned, and that consequently the release, if sufficient in other respects, cannot be disregarded because of such defect of power. This brings us to the last point in the case, and that is as to the legal sufficiency of the release. We have already seen that under the circumstances of this case, that the witness was interested in the event of the suit against Caldwell so far as the matter of costs was concerned, and as a matter of course, if the release is not sufficiently comprehensive to embrace such costs, his interest to that extent still remains, and whether great or small would render him incompetent to testify in behalf of his surety. (See United States v. Leffler, 11 Peters 94, and Riddle v. Moss, 7 Cranch 200.) The release in the case of The United States v. Lcffler, was ‘-‘of all claim against him, (witness,) for any money or thing which he might be liable to pay them or either of them, by reason of any recovery or judgment that might be had against them, or either of them on said .bond, and also for any costs incurred or to be incurred by them or- either of them, by reason of any suit upon said bond.” The release in this case is, “from and against all and every suit, claim or demand of any and every sort, nature or description, of, for, .or in respect of a certain writing obligatory, made by the said Richard C. Byrd, as principal and William J. Byrd and said Charles Caldwell and William Field, as securities, in favor of James McVicar, bearing date the Idth day of November, 1841, for the sum of twelve hundred dollars, payable on or before the first day of June then next ensuing, bearing, interest at the rate of ten,per cent, per annum from date until paid, and expressed to be for value received, and from and against all recourse by or in favor of said estate of said Charles Caldwell, deceased, for said sum of money and interest or any part thereof, upon and against Richard C. Byrd, Ips heirs, executors or administrators, now or at any time hereafter.” The release is not very technically drawn, yet it is' believed, in its legal effect, to embrace not only the principal and interest of the bond, but also any thing that could flow incidentally from it. The security not only releases the witness from and against all pnd every suit, claim or demand of any and every sort, nature or description of, and for the bond in question, but he also releases all such suits, claims or demands which he might have the right te bring or make in respect to said bond. The point now to be determined is whether a suit by the surety against Byrd for the costs of this suit, could be considered as a suit brought or a claim made in respect of the bond now in suit. We think there can be no doubt but that such would be the construction given to the words of the release. The subject matter of such suit being incidental to the suit upon the bond, we think it clear that it would fall within the expression “in respect of, ” and would consequently be embraced within the scope of the release. We are therefore satisfied that the executor possessed the power to execute the release, and that the release itself is sufficiently comprehensive to embrace every matter or thing that could in any manner show an interest in the witness, and consequently he, Having no interest in the event of the suit, was perfectly competent to testify in behalf of the appellant. This being the only question raised by the record, there is an end of the investigation. From the view which he have taken of this case, it is manifest that the court below erred in excluding Byrd, as a witness. The judgment of the Pulaski Circuit Court herein rendered, is consequently reversed, set aside, and held for nought, and the cause remanded, to be proceeded in according to law, and not inconsistent with the_opinion herein delivered.