Dehio, Ch. J.
The legislature, by an act passed April 23, 1862 (Laws of 1862, 846, ch. 460, § 1), amended the second subdivision of the eleventh section of the Code of Procedure, so as to authorize appeals to this court from orders of the court of original jurisdiction refusing a new trial, having before amended it, so as to permit an appeal when a new trial had been ordered. It is rather difficult to determine to what class of cases the amendment last made applies. When questions of law have been raised by exception, and a new trial is denied, those questions were always brought here on appeal from the judgment, and no amendment of the Code was necessary for such cases. When the trial was by jury, it has not been considered expedient that the questions of fact arising upon the evidence should be subject to review in the court of appeals. Such questions are to be heard in the first instance before the judge who tried the cause, on his minutes, or at a special term, on a case, and there is then an appeal to the general term (Code, §§ 265, 349). The litigation of the facts arising upon jury trials was to end there. This is apparent, as well from the nature of the case, the former practice, and general principles of convenience and propriety, as from sundry other provisions of the Code. For instance, where a verdict was taken, subject to the opinion of the court at the general term, which could only be done where the trial presented questions of law alone, the legislature was careful further to provide that a review in this court could only be had, when questions of law were involved in the rendition of the judgment (§ 265). The determination of a single judge, where the trial was without a jury, or the decision of referees upon questions of fact were considered less authori *107 tative than the verdict of a jury, and yet, in the arrangements for appeals in such cases, it was carefully provided that the review of the facts should he limited to the general term of the court in which the action was brought, while the questions of law might be heard in this court (Code, §§ 368, 272, 248). In 1860 amendments were made respecting the review of cases tried by the court without a jury, and by referees, to the effect that where a judgment in that class of cases should be reversed by the general term, the judgment might state that such reversal was upon questions of fact, and when so stated, the propriety of the reversal—either upon matters of fact or of law should be examinable in this court (ch. 459, §§ 9, 10). The limitation of this amendment to cases other than jury trials showed a persistent determination of the legislature that we should not possess a jurisdiction to review verdicts of juries. It was upon the views here presented, that when the amendment of 1862 came first before us, at the last January term, in the case of Pierpont v. Barnard, we decided that it did not effect a change of the principle which limited the examination of the verdict of a jury to the courts in which it was rendered. In that case the jury had returned a verdict for the defendant, and the general term, on appeal from the special term, had denied a new trial, and the plaintiff appealed to this court from that order. It was conceded by the appellant’s counsel that there were no exceptions in the case on which he could rely, or any questions of law ruled by the judge, and the only point was whether the verdict was not against or without evidence. The court held that there was nothing which could be reviewed under this amendment, and dismissed the appeal.
The present appeal presents a different question. A new trial has been denied, and the appeal from that determination does not involve an examination of a verdict. It is true that the application to open a case on the ground that the party has been surprised, or has discovered new evidence, is usually addressed to the discretion of the court; and convenience as well as anal ogy would seem to require that it should be determined exclusively by the court of original jurisdiction. It is very much of the same character as a default or other laches suffered by mistake or surprise, which may be relieved against in proper cases by the court in which the action is pending; but it has not *108 hitherto been supposed that the disposition of such matters were re viewable by an appellate court. We must however intend that something was meant to be effected by the amendment of 1862; and as this appeal is within the language, and taking cognizance of it would not be hostile to any other provision of the Code, or to any settled purpose of the legisláture, we have come to the conclusion that we possess jurisdiction to hear and determine the question involved in it.
The defendants in the present action prevailed before the referee, in their defense to the plaintiff’s claim for compensation as attorney and counsel of the defendants in prosecuting an appeal in their action against Fox and Brookman from the circuit to a general term, that defense being that tire plaintiff had agreed to render his services gratuitously, and to require only payment for his traveling expenses to the supreme court. All the parties were examined as witnesses. Both defendants swore to such an agreement, and the plaintiff denied it. In their testimony the defendants stated that the agreement was made at the plaintiff’s office, at Fort Plain, on the occasion of signing the undertaking for the appeal to the general term, and one of them, Jacob G-. Bush, swore that Mr. Davis, who was a surety in that undertaking, was present, and made a remark touching the inexpensiveness of the proceeding since the plaintiff was not to charge any thing for his services. The defendants stated that they were reluctant to bring the appeal, and consented to do so in consequence of the plaintiff’s agreement. In the plaintiff’s testimony, after denying the alleged agreement respecting the appeal to the general term, he stated that after the case had been decided against his clients, the present defendants, at such general term, he, the plaintiff, proposed that they should take an appeal to the court of appeals, and offered, in case they would do so, that he would charge them nothing but disbursements in case they did not succeed. An undertaking, he said, was drawn for the last mentioned appeal, and it was signed by Davis as a surety, but it was abandoned, the defendants being ultimately unwilling to go on. The question upon this evidence—and it is all which was given touching the alleged agreement—was, of course, whether the defendants had not mistaken the conversation respecting the proposed second appeal (i. <?., to the court of appeals), for *109 an agreement touching the appeal to the general term, ■which was actually brought. The referee found against this hypothesis ; but the plaintiff now swears to certain evidence which he has since discovered, and which he maintains will demonstrate that the defendants swore untruly, or at least mistakenly, and that his testimony furnished the true account of the matter. The undertaking for the appeal to the general term appears to date about the 22nd April, 1859, and to have been signed by the present defendants and by Peter G-. Garlock as principals, and by Alfred B. Davis and Daniel Hufnail as sureties. The plaintiff, in his affidavit in support of the motion, swears that Davis has informed him, in substance, that the fact is, and that he is ready to swear, that he executed the undertaking upon the appeal to the general term at about the time mentioned, at the office of the plaintiff; that said plaintiff was not present; that Henry Adams, Esq., the plaintiff’s father, was present on that occasion and superintended the execution of the paper by said Davis, and that he never heard any conversation respecting the plaintiff’s compensation for services respecting that appeal, but that in June, I860, he was at the plaintiff’s office to execute an undertaking for an appeal, in the same case, from the general term to the court of appeals, and that said plaintiff there stated to the defendants, who were reluctant to bring that appeal, that if they would do so, and should fail of success in the court of appeals, he would not charge them any thing except his traveling expenses, and some small items of expense which said Davis cannot recollect, and that he never heard the plaintiff say any thing about compensation at any other time.
The plaintiff’s affidavit also states that Hufnail will swear that he signed the said first undertaking as surety the 22nd April, 1859, and and that no one was present except Peter G. Garlock and. the plaintiff, and that no conversation took place upon the subject of the plaintiff’s compensation. The plaintiff excuses to a certain extent his want of preparation to meet the testimony of the defendants on the trial by saying that that part of the case was gone through with in haste, on account of the impatience of the referee, who was anxious to close the case and return home, after an absence of several days, which had been consumed on the trial, and that he did not *110 then recollect the facts of refutation which he has now the power to make use of, and he excuses the delay in applying for the new trial, by the proceedings before the referee, to induce him to open the case.
There seems to me so strong a probability that the testimony of those persons would clear up the difficulty, and reconcile the discrepancy in the testimony of the parties, that an opportunity ought to be afforded for hearing their evidence, unless the granting the application would violate some settled practice of the court. It has been often held that a new trial would not be granted on account of newly discovered evidence, where it was merely cumulative. In one sense, evidence to establish the same general proposition is cumulative, but this is not what is meant by the term as used in the cases. All evidence in a cause, to be competent, must bear upon the issue. If there had been an acknowledged interview between the parties at the time the undertaking was signed, and evidence had been given pro et contra as to tire alleged agreement having been then made, the testimony of additional witnesses would have been cumulative, and a new trial would not have been granted to enable their evidence to be given. The proof alleged to have been discovered in this case, is not all of that character. If the plaintiff was not present when the first undertaking was signed, he could not have made the agreement on that occasion. Both the Bushes swore that it was made at that time. It is possible that there may have been more than two occasions of signing. Davis signed it at one time, and then the plaintiff was not there. Hufnail signed it at a different time, but the Bushes were not present. It is not said when the principal parties executed it, but as J. GL Bush swears that Davis was present at the time of the agreement, it must have been at the time of the execution of the paper by him. The plaintiff is corroborated by Davis as to the conversation when the undertaking was signed in 1860. This conversation was not directly opposed to the evidence of the agreement said to have been made the year before, but it shows considerable probability that the defendants were under a mistake. This corroboration, however, would not be sufficient to warrant a re trial of the case. But the testimony of Davis, if such as the plaintiff’s affidavit suggests, would be to *111 a new point, namely, the absence of the plaintiff on the occasion when lie is supposed to have made the agreement. That had not been stated by any witness actually examined. It is in the nature of an alibi, and resembles a case where one should be convicted of an act, and should afterwards be able to show that when the supposed act was done he was in another place. The cases admit that such evidence would not be cumulative (Sargent v. -, 5 Cow., 160; The People v. The Superior Court of New York, 10 Wend., 285).
After all, a new trial should not be granted for such a cause without pretty strong grounds for suspecting that justice has not been done, and that a rehearing of the matter in the light of the new evidence will change the result.
I think the more just exercise of the discretion of the supreme court, would have been to order the plaintiff to try the cause again, for the purpose of further testing the question; and since that decision seems to be cast on us, we must so determine. But this should be done only upon terms.
As the plaintiff recovered a considerable amount on the trial, he ought not to be compelled to pay the costs then incurred. As it is to be presumed that he will receive at least the same amount again, he might compel the defendants to pay the costs of the second trial, though he should fail upon the portion of his demand involved in his appeal. He must therefore stipulate not to tax costs against the defendants for the further proceedings in this case, but that he will pay costs to the defendants, if he should fail to recover for his services in the appeal to the general term in the case of Bush and others against Fox and another, mentioned in the answer in this action, provided the defendants shall agree to submit to a report against themselves to the amount before reported.
The costs of this appeal are to abide the same result, namely, whether the plaintiff' shall ultimately recover for these disputed services.
■The other judges, however, were all of the opinion the plaintiff’s papers in support of the motion were defective in not containing an affidavit of the witnesses who, it was claimed, would give the additional evidence relied on, stating that they were ready to swear to the facts claimed to be newly discovered.
*112 They therefore decided to affirm the order appealed from, upon that ground, though it had not been suggested by the respondents’ counsel, without passing upon any other point; and Denio, Ch. J., was understood to concur in that determination.