## NEW YORK COMMON PLEAS.

JAMES LEFFERTS agt. JOHN BRAMPTON and others.

CHARLES E. BORSDORF and others agt. JOHN BRAMPTON and others.

The right to the *inspection of books and papers*, with a view to the *discovery of evidence*, is distinctly recognized by statute, and is not to be confounded with the production of them as evidence *upon the trial*, or on the *examination of a party as a witness before trial*.

If there is reason to believe, upon the case as laid before the court, that the evidence in reality exists, and is material to the matter in controversy; if the other party admits the possession of the books or documents alleged to contain it; if he also impliedly admits the probability of its existence, *by not denying it*, and no great practical inconvenience will follow from allowing the other party to inspect it, the privilege ought to be *granted*.

Thus, where the plaintiffs brought their action to recover the possession of goods obtained from them by the defendants' assignors, upon *representations alleged to have been fraudulent*, and in their sworn *petition* stated that they were informed and believed that an examination of the books of the assignors, by a competent book-keeper, would enable the plaintiffs to show the assignors were, when they made their representations of solvency referred to in the complaint, hopelessly insolvent, and that they knew that the representations made by them were false,

Lefferts and Borsdorf agt. Brampton.

*Held,* the defendants making no answer to the application, but moved to dismiss it on the ground that the discovery could not be allowed by the practice of the court, that the case appeared to be eminently one in which the court should lend its assistance to enable the plaintiffs to inspect documentary evidence which would show whether the representations made by the defendants' assignors *were true or fasle.*

*New York General Term, November,* 1862.

DALY, BRADY and HILTON, *Judges.*

THIS was an application on behalf of the plaintiffs, for an inspection of the books and papers of the defendants' assignors, in the possession of the defendants.

By the court, DALY, F. J.   An inspection of books and papers will be granted, if facts and circumstances are shown which warrant a presumption that the book or document sought contains evidence which will prove, or tend to prove, some fact which the party applying has to establish. (*Rule XV of the Supreme Court; Davis* agt. *Dunham,* 13 *How.,* 425 ; *Commercial Bank of Albany* agt. *Dunham, id.,* 341; *Hoyt* agt. *American Exchange Bank,* 1 *Duer,* 652 ; *Jackling* agt. *Edwards,* 3 *E. D. Smith,* 539.)   The applicant is not required to prove positively that the documentary evidence exists, as the right given is one of discovery ; but he must show sufficient to satisfy the court that there is good reason to suppose that the opposite party has documentary evidence in his possession material to the matter in issue, and the presumption that he has, becomes a very strong one, if, with the means of knowledge in his power, he does not deny the fact.

The two actions in which the present application was made, were brought to recover the possession of goods obtained from the plaintiffs by the firm of Goldsmith & Gutman, upon representations alleged to have been fraudulent.   It is stated in the petition, that the goods were sold to them upon a representation by them that they were solvent ; that they had a capital of $17,000 ; had made money, and were doing a profitable business.   That the sale was

made in the months of June and July, 1857, and that, in the next month, Goldsmith & Gutman failed, and made an assignment to the defendants for the benefit of creditors.

It is averred that Goldsmith & Gutman kept, up to the time of their assignment, books of account, showing the amount of the capital invested by them in their business, their losses and profits therein, their debts, liabilities and assets, and their business transactions generally; showing the pecuniary condition of the firm before, since, and at the time when the sale above referred to was made; which books, it is averred, are now in the possession of their assignees, the defendants. That the petitioners applied to the defendants for liberty to see the books, and received for reply that no one should be allowed to see or inspect them.

The petitioners swear that they are informed and believe that an examination of the books by a competent book-keeper, will enable them to show that Goldsmith & Gutman were, when they made the representations referred to, hopelessly insolvent, and that they knew that the representations made by them were false.

The defendants made no answer to the application, but moved to dismiss it, on the ground that the discovery sought could not be allowed by the practice of the court, and the motion was granted.

It may fairly be inferred that it will appear by their books what capital the firm had when they made the representations referred to, and whether, as they represented themselves to be perfectly solvent, and then doing a profitable business, these books constitute the written record which they kept of their business while engaged in transacting it; and if the books will show that the representations made by them were false, the evidence is not only material, but of a very conclusive kind. The fact that nothing which is stated in the petition is denied; the circumstance of Goldsmith & Gutman's failure in six weeks

after these representations were made ; and the statement of the plaintiffs, under oath, that they are informed and believe that an examination of the books by a competent book-keeper will enable them to establish that Goldsmith & Gutman knew what they represented, to be false, should, I think, be sufficient to warrant a well-founded suspicion that the evidence sought for exists, and will be obtained by an inspection of the books. Applications which contemplate a general investigation of the books of a party in business, are looked upon with great disfavor. It would be an abuse of the forms of judicial procedure, to allow them to be resorted to as a means of compelling a man to expose the whole of his business affairs to the prying curiosity of an adversary, actuated by no other motive than the hope that he may be able to discover something which he may use to his advantage in a legal controversy. To say nothing of the interruption, inconvenience and humiliation to a man in business giving up all his books, documents and papers to an investigation to be conducted by his adversary, there is the additional consideration that an exposition of the secrets of his business may prove detrimental to him. Such applications, therefore, are almost uniformly denied ; for the case must be an exceedingly strong one—the facts and circumstances adduced in support of it, of the most conclusive kind—to justify a court's compelling a man who is in business, to expose all his books and papers for the discovery of evidence supposed to be contained in them. On the other hand, the right to the inspection of books and papers, with a view to the discovery of evidence, is distinctly recognized by statute, and is not to be confounded with the production of them as evidence upon a trial or on the examination of a party as a witness before trial. The Revised Statutes (*vol. 3, p. 293*, §§ 60 *and* 61, *5th ed.*) speak of compelling a discovery ; of compelling a party to a suit in such cases as the court may prescribe by general rules to discover books, documents

and papers in his possession or power, relating to the merits of the suit; and the Code, in the recognition of this right, is much stronger, by providing (§ 388) that "the court before which an action is pending, or a judge or justice thereof, may, in their discretion and upon due notice, order either party to give to the other, within a specified time, an inspection and copy, or permission to take a copy, of any books, papers and documents in his possession or under his control, containing evidence relating to the merits of the action or the defence;" an enactment in the Code which is merely auxiliary to and not a substitute for the previous provisions in the Revised Statutes. (*Gould* agt. *McCarthy*, 1 *Kern.*, 576.) The right here granted is coextensive with what could be obtained in equity by a bill of discovery. (*Townsend* agt. *Lawrence*, 9 *Wend.*, 458.) In equity the discovery was twofold; to discover the existence of written evidence assumed or believed to be in the possession of the other party; and then, if its existence and the possession of it was not denied, a discovery of its contents. (*Pollock on Courts*, 8.) It is the same under our statutes. There is a clear recognition that the ends of justice may be promoted by compelling a party to discover whether he has not writings in his possession tending to prove the matter in controversy; whilst at the same time, to guard against the abuse that would arise if parties were always allowed, under the form of a legal procedure, to pry into the private papers and books of their opponent, it is left to the sound discretion of the court, in every case, to say whether the privilege will be granted or not.

If there is reason to believe upon the case, as laid before the court, that the evidence in reality exists and is material to the matter in controversy; if the other party admits the possession of the book or document alleged to contain it; if he also impliedly admits the probability of its existence, by not denying it, and no great practical incon-

venience will follow from allowing the other party to inspect it, the privilege ought to be granted.

Such is the case here. The plaintiffs have repossessed themselves of the goods; they must vindicate their right to retake them; and the case appears to me to be eminently one in which the court should lend its assistance to enable them to inspect documentary evidence which will certainly show whether the representations made by Goldsmith & Gutman were true or false. Neither the defendants nor Goldsmith or Gutman have undertaken to deny that the examination of the books will show that the representations were false. Not the slightest circumstance is given in explanation of the failure of the firm in six weeks after they had given such a flattering account of their business. The objections which might exist where liberty is asked to examine the books and papers of a merchant engaged in the ordinary prosecution of his business, do not exist in their case. Their business is at an end. Their affairs are in the hands of assignees for settlement, and no prejudice, injury or great inconvenience can arise from allowing the plaintiffs to inspect their books.

It is suggested that the examination asked for can be had at the trial or before it, by subpœnaing the parties or witnesses, and compelling the production of the books by a subpœna, *duces tecum;* and in *Breevort* agt. *Werner,* (8 *How.,* 321,) Justice HAND says that " a mere discovery, so called, as to books, documents and papers, should be in no other way than on the examination of the party." The answer to this suggestion is, that the statute gives the right to a discovery, and declares that, where the proceedings for that purpose are not therein provided, " the court shall be governed by the principles and practice of the court of chancery, in compelling discovery." There is nothing in the general rules which the supreme court have adopted, nor in the Code, to warrant such a conclusion as that the dis-

covery can be had in no other way than upon the examination of the party. It was an existing remedy before the party could be examined. The party seeking the discovery may have nothing to ask the other party. The documentary evidence, if found, may be all that he requires, and he is not to be compelled to put his adversary upon the stand as a witness, when evidence that cannot be evaded, falsified nor contradicted may be obtained. The party applying, moreover, may wish to discover evidence that is against as well as for him. He may be satisfied, upon the inspection of documentary evidence in the possession of the other party, that he cannot maintain a defence, or that he must abandon his action; and such an inquiry, when made *bona fide*, is to be encouraged, as it may cut short the litigation and stop the increase of costs. The discovery of the evidence sought on the trial, or on the examination of the party, may be attended by great delay, which is avoided by an inspection out of court. The examination at the trial may prove very inconvenient, and to a certain degree impracticable, where the discovery sought depends, as in this case, upon the inspection of a set of mercantile books. A skillful accountant might be able to tell in a very short time whether the books do or do not show that the firm were hopelessly insolvent when they purchased the goods of the plaintiffs, or it might require on his part a very careful examination extending over many days. If the examination is to be allowed at all, it will economize time at the trial, and tend to elicit the fact with greater certainty, by permitting an inspection of the books out of court; and as there is nothing in the statute or in the general rules of the supreme court necessarily coupling this inspection with an examination of the party as a witness, it should be allowed in the way in which it has heretofore been allowed, if the facts and circumstances shown lead to the conviction that it may tend to promote the ends of justice. In my

judgment, enough has been shown in this case to warrant a reasonable presumption that it will; and I think that the motion, to the extent of allowing the inspection of the books in the hands of the assignees, should have been granted.