McCue, J.
The question presented on this appeal is whether, upon examination of the party before trial, the party can be compelled to produce books and papers by the service upon him of a subpoena duces tecum alone without even directing the production of said books and papers.
There seems to be no doubt that upon the examination of a party, at the instance of the adverse party, upon the trial of the action, the attendance of the party can be secured by the service upon him of a subpoena, as in the case of an ordinary witness, and that *57 lie may be compelled to produce upon said examination any books and papers in his possession or control (see sections 828, 852).
But when the examination or deposition of a party is sought to be had before the trial, such deposition can only be had under section 820, and upon such examination he may be compelled, under the order of the court, to produce all books and papers as fully as though the examination were had at the time of the trial, and for disobedience to such order he may be punished as if he had failed to obey a subpoena to attend at the trial of the action (see sections 853, 874).
By section 880 it is made the duty of the judge or referee taking the deposition to insert therein every answer or declaration of the person examined, which either party requires to be inserted, and because of the latitude this allowed the examination, the Code intended to guard the party examined -against an unfair subpoena of his books, wisely compelling the party seeking the examination or inspection of an adversary’s books, to show, before obtaining an order, that the examination desired is both material and necessary— thus closing the door against abuses which would inevitably creep in if the party should be compelled upon a .subpoena duces tecum,, and out of court, to produce his books and to answer every question in relation thereto, without the opportunity to invoke the protection of the court, in case the testimony offered was irrelevant and incompetent, as he might do if the examination took place in the trial of the action and under the direction and protection of the court.
We think the motion to punish for contempt was properly disposed of, and that the order appealed from should be affirmed, with $10 costs.*
No appeal was taken.

 In Morrison v. McDonald, New York Supreme Court, Special Term, and Chambers, June, 1880, it was held that where the party *58 under examination voluntarily referred to the contents of his books, he could be compelled to produce them or to state the contents.
The application to compel production was founded on the following allegations by affidavit.
This action was commenced by the service of a summons upon the defendants, and, immediately thereafter, by a petition addressed to the court, the plaintiff showed to the court that he had a good cause of action, against the defendants herein, for a certain share or portion of the sum of $30,000, being "the proceeds of a certain mining claim, known as the B. claim. That said claim arose out of the following facts: That the plaintiff in this action had an interest to the extent of one-quarter in said claim; that the title thereto was placed in the defendant, W. X., and that he undertook and agreed to hold the same in trust for himself and the others who were interested therein; that plaintiff’s interest was kept with that of the defendant, Y. Z.; and the said Y. Z., the defendant, had all the management of the affair so far as he and said W. X. were concerned. That the defendant, W. X., sold the said claim for $30,000, and two thousand shares of stock [named]; that the plaintiff has received his share of the stock, but he has received no part of the $30,000. That the plaintiff applied to W-. X. for his shave of the profits thereof; that W. X. refused to recognize him, and said that he had paid it to Y. Z. That the plaintiff applied to Y. Z., and he informed the plaintiff that he had not collected the money from W. X., and that between W. X. and Y. Z., the defendants, the plaintiff was unlawfully deprived of his interest in said $80,000, amounting to some $7,000.
That upon a petition setting forth these facts and others, the Hon. O. D. made an order, dated, &c., directing the defendants to appear and be examined before trial. That the defendant, Y. Z., has been examined in this case, and that it appears by his testimony that the title to the property was in W. X., and that he has sold the same for $30,000 and the stock aforesaid, and Y. Z. says that W. X. has not paid over to him his share of the said $30,000, in which the plaintiff has an interest.
That said W. X. has been sworn for examination in this case, and, upon being asked the question on such examination; “But you have not stated that you have paid any part of this $30,000 to Y. Z., or to his account, since you have received it from him—that is what I want to know?”-—he answered,, “Whatever amounts I have paid for to Y. Z. and myself in enterprises would, of course, come out of the $30,000 received for the B. when we settled up our account.” And being asked the following: “How much have you so paid, and on what accounts ?”—he answered as follows: “I could not tell you, *59 and I object to your entering into private transactions between Y. Z. and myself in this case, with which you have no connection.” And upon being asked the following question: “ Can’t you find out from your books and other sources how much you have paid of this $30,000, and how much remains in your hands?”—he answered, “I can as soon as I have a book-keeper; my book-keeper left me on the 1st of May, and I have been as yet unable to replace him.” And upon being asked the following question: “Do you yourself not know anything about your own books, to be able to get the information from them without hiring a new book-keeper?”—he answered as follows: “I might, but would prefer to have a professional book-keeper make any statement which had to be sworn to. I never looked at the books, taking the book-keeper’s accounts as correct.” And,upon being asked the f olio wing question: “Will you get this information asked for, as to what part of this $30,000 yet remains in your hands, and answer the question on the next adjourned day?” he declined to-answer such question.
That upon such examination, in answer to the following question, “Did you hand him (meaning Y. Z.) any money which you received from L. on the B. claim?” he answered, “ That the money was passed to the credit of the B. claim joint account, W. X. and Y. Z., on my books.”
Deponent further says, that it is material and necessary, in order to-enable deponent to frame the complaint of the plaintiff in this action, for him to know positively what amount of money said W. X. has paid to the said Y. Z. on account of said B. claim. That said W. X. either will not tell or does not know, but that, as appears from his foregoing answers to the questions put to him on his examination, there is an account upon his books entitled or known by him, as the B. joint account, W. X. and Y. Z., to which this $30,000 had been credited. That it is absolutely essential and necessary, in order to-enable the plaintiff in this action to frame his complaint, that he should know how much of that money has been paid to Y. Z., and how much remains in the hands of W. X., and said W. X. has refused to allow an inspection of his books or to bring the same into court and testify as to their contents.
Robert Sewell, for plaintiff.
Edward F. Brown, opposed:—Cited Harbison v. VanValkenburgh, 5 Hun, 454; Campbell v. Hoge, 2 Id. 308; Hauseman v. Sterling, 61 Barb. 347.
Lawrence, J. This motion is granted unless the defendant, after examining his books, will furnish the information called for.
*60 The defendant having referred to the contents of his books voluntarily, cannot, in this proceeding, object that such books cannot be called for by his opponents.