GERTRUDE AHLMEYER, Respondent, *against* JOHN E. HEALY *et al.*, Appellants.

(Decided December 5th, 1887.)

On an application by plaintiff, in an action to recover for injuries caused by negligence of the proprietors of a travelling show, for discovery and inspection of defendants' books, it appeared that all the property of the show belonged to defendants; that a man in their employ was the ticket-taker and sent the collected tickets to defendants; that the main object of the show was to draw attention to patent medicines prepared and sold by defendants; that the accounts of the show were kept by defendants; that, after the fall of the seats, by which plaintiff was injured, they procured new seats for the show; and that they paid damages to some of the persons injured by such fall. The show bore the name of one called "Nevada Ned" and was ostensibly conducted by him. *Held*, that these facts warranted the presumption that defendants' books would show that they were the actual proprietors, and the order for discovery and inspection was properly granted; that the fact that one of the defendants, on a preliminary examination, swore that he was not able to testify fully without his books, and might therefore have been compelled to produce them to refresh his memory, was no ground for refusing the order for inspection, as such production might not have answered plaintiff's purpose.

Ahlmeyer *v.* Healy.

APPEAL from an order of this court for discovery and inspection of defendants' books.

The facts are stated in the opinion.

*George W. Stephens,* for appellants.

*Payson Merrill,* for respondent.

VAN HOESEN, J. — The plaintiff, whilst visiting a show called Nevada Ned's Indian Village, at which some Indians performed, and certain nostrums were sold, was injured through the negligence of those who had charge of the tent. She believed that Healy and Bigelow were the actual proprietors of the show, and she brought this action against them, to recover damages for her injuries. An order was made for the examination of the defendant Healy before trial, the expectation of the plaintiff being that Healy would admit that he and his partner were the owners of the show. Healy did not make that admission, but swore that, though Healy and Bigelow owned what is called on the frontier, "the entire outfit," yet that "Nevada Ned" was the proprietor, having leased from them property used in the show, and undertaken to conduct a sort of circus business on his own account. In the course of his examination, Healy made a number of references to the books of Healy and Bigelow, and said that if he had those books in court he would be able to answer several questions which, without the books, he could not answer. It would have been proper, when that fact appeared, to apply to the court for an order that the books be produced (*Morrison* v. *McDonald,* 9 Abb. N. Cas. 57; *Parsons* v. *Belden,* Id. 55, 57).

A witness may be compelled to refer to a memorandum in court, if it be needed to refresh his memory (Greenleaf § 436), and, under sections 853 and 874 of the Code, a party upon an examination before trial may be compelled to produce a paper under his control when he swears that

he cannot answer a question without referring to it.    This power of the courts to compel a party, upon an examination before trial, to produce a book or a paper, is not at all connected with or dependent upon those provisions of the laws that authorize courts to order an inspection or a discovery.

But if Healy had been compelled to produce his books in order that he might complete his answers, the end of the plaintiff might not have been attained.    An examination of the books whilst the witness was giving his testimony could hardly have been satisfactory.    It is almost always the case that a party can be compelled by *subpœna duces tecum* to produce his books at the trial, but yet it is in the discretion of the court to determine whether a discovery in advance of the trial should not be had (*Stilwell* v. *Priest*, 85 N. Y. 649).    A discovery is proper when facts and circumstances are shown that warrant a presumption that a book or a document contains evidence that will prove, or tend to prove, some fact that the party applying is bound to establish.    Absolute proof that the documentary proof exists is not required (*Lefferts* v. *Brampton*, 24 How. Pr. 257; *Union Paper Collar Co.* v. *Metropolitan Co.*, 3 Daly 171).

The sole inquiry here is, Do the papers warrant the belief that the books of Healy and Bigelow will show that that firm were solely, or in connection with "Nevada Ned," the proprietors of the show at which the plaintiff received her injuries?

We concur in the correctness of the rule that a discovery is not proper where the object of the applicant is not so much the obtaining of evidence that he knows or has good reason to believe to be in existence, as to obtain an opportunity of examining his adversary's books, with the hope of discovering something in them that may prove advantageous to him (*Davis* v. *Dunham*, 13 How. Pr. 425).

If the connection of Healy and Bigelow with the show were not clearly proved, we should unhesitatingly deny this application.    It would be most oppressive to permit a

plaintiff, on the mere suspicion that the defendant was the owner of land on which an actionable injury had been sustained by him, to ransack all the defendant's papers in a search after a supposed unrecorded deed, which, if it existed, would vest the title in the defendant. That is not this case. The fact is conceded that all the property (except, perhaps, a few horses) belonged to Healy and Bigelow; that a man in their employ was the ticket-taker at the door; that the tickets when collected were sent to them; that they advanced money for the payment of some of the claims for damages that were made by persons who were injured at the time the plaintiff was hurt; that the main object of the show was to draw attention to the medicines which the defendants prepared and sold; that the accounts of this show were kept by them; and that after the fall of the seats by which the plaintiff was injured they procured new seats for the show. It is true that Healy attempted to explain away these facts, but he did not entirely succeed. The agreement of January 19th, 1886, does not show what the relation between "Nevada Ned" and Healy and Bigelow really was. It is not inconsistent with the proprietorship of Healy and Bigelow. Besides, the Special Term may have doubted the story of Healy. There are statements in his deposition that can be reconciled with great difficulty, if they can be reconciled at all. Healy at first said, "I sold 'Nevada Ned' his three Norwegian ponies, in the summer of 1886. I sold him two for about $500.00. He paid part, and may have paid all." Afterwards he said, "The horses I bought for the purpose of starting a Wild West show for myself. I bought them; the firm did not. I did not sell them to Ned. I just loaned them."

The facts that I have stated seem to me fairly to warrant the presumption that the books of Healy and Bigelow will show that the firm was the real proprietor of the show. I am of opinion, therefore, that the order appealed from was properly granted, and that it ought to be affirmed, with costs and disbursements. The case bears some resemblance to that of *Stilwell* v. *Priest* (85 N. Y. 649), which I have

already cited. There the plaintiff had been injured by the fall of a bill-board. Two firms, Norton & Conklin and Priest & Benjamin, were believed to be jointly interested in the bill-board. Whether Priest & Benjamin were interested depended upon a contract between that firm and Conklin & Norton. Priest denied that his firm was liable, and it became important for the plaintiff to see the contract in order that he might know how to frame his complaint. The court ordered that the contract be deposited with the county clerk, and that the plaintiff should be permitted to inspect and copy it.

LARREMORE, Ch. J., and J. F. DALY, J., concurred.

Order affirmed, with costs.