Bonesteel agt. Lynde and others.

## SUPREME COURT.

### BONESTEEL agt. LYNDE AND OTHERS.

By the true construction of § 390 of the Code, a *party* to an action may, at the instance of the *adverse party*, be compelled by the process of *subpœna duces tecum*, not only to appear at the trial and submit to a personal examination, but to produce papers and books in his possession, precisely as any other witness may be so compelled. And a witness, when properly subpœnaed, is as much bound to produce books and papers in his possession as evidence, as to testify orally,—and, his neglect of either is a contempt of court. (*This seems to be adverse to Trotter agt. Latson*, 7 *How. P. R.* 261.)

Where a plaintiff having neglected to produce a lease and inventory in question, after having been duly subpœned for that purpose; and standing convicted of having surreptitiously procured the possession of them, with the intention of preventing their introduction in evidence, after he knew that the process of the court had been issued for the purpose of obtaining them, and was on its way to the person having them in custody; and afterwards refusing to restore them when properly requested; *held*, that his excuse on the trial of having lost or mislaid them was inadmissible. He was held and treated as in *contempt*, and his complaint stricken out with costs.

A *referee* has no power to strike out a complaint, nor to punish for a contempt.

*Monroe Special Term, January*, 1853. Before WELLES, Justice. Motion to strike out complaint under § 394 of the Code.

After issue joined, the action was referred to E. Griffin, sole referee, to hear and decide the same. The trial before the referee commenced on the first day of September, 1852, and after some evidence had been given on that day, it appears to have been adjourned until the 16th day of November following. On the day last mentioned, and a short time before the resumption of the trial, the defendants caused the plaintiff to be subpœnaed to appear and give evidence, and to produce upon the trial a certain paper, being a lease between the plaintiff and one David M. Jacocks, for a tavern house in the city of Rochester, together with an inventory of household furniture annexed. This inventory was regarded by the defendants and their counsel as material evidence on the trial before the referee.

Bonesteel agt. Lynde and others.

It appeared that the said David M. Jacocks was dead, and that his son, John Jacocks, who remained in the tavern house after his father's death, had handed the lease and inventory to one Alvah Benedict, who was Jacocks' security on the lease. On the morning of the first day of September, the day the trial commenced before the referee, the defendant, Lyndes, subpœnaed John Jacocks to attend the trial and produce the lease. John Jacocks then informed Lynde that the lease was out at Benedict's, some six miles from the city of Rochester. Lynde thereupon went and subpœnaed Benedict, accordingly. Directly after the subpœna was served on John Jacocks, the plaintiff was told by him of the fact, and that the lease was with Benedict, and that Lynde had gone to subpœna him. Immediately afterwards, and on the same morning, and before Lynde got to Benedict's, the plaintiff went there, ascertained that Benedict was at work on his farm; stated to Benedict's wife he wanted a certain lease. She was unwilling to let him have it, and referred him to her husband, at work on his farm. He professed to be in a hurry, and she then went to look for the lease, and he looked for it with her. The lease and inventory were found, which he took and carried away with him. About an hour afterwards, Lynde arrived, and subpœnaed Benedict to appear and produce the lease and inventory at the trial. All this occurred in the forenoon of the first of September. After the trial had commenced on that day, and after the defendants' counsel was informed that the plaintiff had obtained the lease and inventory, he gave the plaintiff's counsel verbal notice to produce it on the trial. When the trial was resumed on the 16th day of November, and after the plaintiff had closed his evidence and rested, the defendant's counsel called the plaintiff as a witness, who was duly sworn and examined respecting the papers in question, on which occasion he admitted he obtained them from Mrs. Benedict, in the forenoon of the first day of September, in the absence of her husband. He alleged he had since lost or mislaid, and therefore could not produce, them. He was questioned minutely by the defendants' counsel, touching the manner in which he became possessed of them,

his motive in obtaining them, and what had become of them; and his answers were evasive and unsatisfactory. Among other things, he stated that Benedict had called upon him for them some three, four, or five or six weeks before, and he had refused to give them up, stating he thought he would keep them himself; and when asked by defendants' counsel why he refused to return them to Benedict, he replied he had no reason, only he thought he would keep them himself. Benedict was examined and testified that the papers were taken from his possession without his knowledge or consent, and that about one hour afterwards, he was subpœnaed by Lynde, to produce them on the trial. That he had since called on the plaintiff twice for the papers, who replied he was not disposed to give them up, without assigning any reason for his refusal. Mrs. Benedict was also examined, and described the manner of the plaintiff's obtaining the papers from her.

The defendants' counsel moved before the referee that the complaint be stricken out, which the referee decided he had no power to do. After the proofs were closed, the referee made a report in favor of the plaintiff, for $118,00.

S. B. JEWETT and S. MATHEWS, *for Defendants.*
J. H. MARTINDALE, *for Plaintiff.*

WELLES, Justice.—There is no escaping the conclusion, from all the facts in the case, that the plaintiff, upon learning that the defendants were taking measures to have the lease and inventory in question produced upon the trial for the purpose of being used as evidence, set himself at work to prevent it; and with that view fraudulently and surreptitiously obtained the possession of them, and thereby succeeded in depriving the defendants of the benefit of their production. The means to which he resorted in order to effectuate this object, was a flagrant insult to the law, and the authority and process of the court, and is deserving of the most unqualified condemnation. The defendant had subpœnaed the individual who he had good reason to believe had possession of them, to produce the papers in question; and upon learning from him that they had

Bonesteel agt. Lynde and others.

.been delivered to another person, he proceeded with a subpœna *duces tecum*, to that person, with all reasonable diligence; and before he had time to accomplish his purpose, the plaintiff, with an assiduity and zeal worthy of a better motive, intercepted and thwarted him. He was distinctly told by young Jacocks that he had been subpœnaed to produce the papers, that they were in the hands of Benedict, and that the defendant, Lynde, had gone to Benedict's for the purpose of subpœnaing him in like manner. After this he obtained possession of the papers as above stated; and when applied to by Benedict afterwards, and before his examination before the referee, to restore the papers of which he had thus furtively possessed himself, he refused, without assigning any reason for such refusal.

On learning this, all that the defendants could do was to give him notice to produce the papers on the trial, and to subpœna him to produce them. This was done. On being placed on the stand as a witness, he seeks to shield himself from the consequences of his disobedience of the command of the subpœna, under the excuse that he has lost or mislaid the papers he was required to produce.

With a knowledge of the evidence to be produced against him on this motion, contained in the moving papers, he offers no explanation or denial of any part of it, but meets the application now made, with his own affidavit, simply denying that at the trial, or the time of making the affidavit he knew where the papers in question were;—stating that he had not intentionally destroyed or concealed them—and therefore could not produce them; and that he had a duplicate of the lease at the trial which he could have furnished the defendants if requested, but that such request was at no time made. The evidence establishes, beyond a doubt, a deliberate design which has so far proved successful, to elude the process of the court. He knew the subpœna had started on its mission for the papers; and without the slightest color or pretence of right to them, he got possession of, and then refused to restore them. His denial of knowledge where the papers are, would now serve him a better purpose, provided he had satisfactorily explained the

Bonesteel agt. Lynde and others.

charge and met the proof of it, that he obtained them surreptitiously. With that charge proved and unexplained, his denial of knowledge of their whereabouts cannot avail him. Having traced them into his hands under the circumstances mentioned, he was bound at his peril to produce them at the trial, and is not allowed to alledge that he has lost them.

The plaintiff's allegation that he had a duplicate of the lease which he could have produced if requested, is equally unavailing. 1st. It no where appears that the defendants knew or were informed that he could produce the duplicate. If that would have served them the same purpose as the one he alledged he had lost, he should at least have offered to produce it. 2nd. If he had so offered to produce the duplicate, it would have been for the defendants to say whether they would be satisfied with it. It was the papers of which he had wrongfully possessed himself, which the defendants had a right to have produced, for the production of which they had taken the legal measures, and which, but for the unwarrantable interference of the plaintiff, they would have procured.

It was among other things urged on the argument in the plaintiff's behalf, that the subpœna was not served upon him sufficient time before the examination, to bring him into contempt for disobedience to its commands. This is a mere afterthought. The trial was in the city of Rochester and the plaintiff resided there. He made no complaint at the time of his examination of want of time, but put his omission to produce them upon the sole ground of their having been lost. If he had asked for time to make search for them, the referee would undoubtedly have allowed it to him.

It was also contended upon the argument of the motion, that it did not appear that the papers in question were material evidence upon the issue. Enough is shown to satisfy me that they might have been material, and it was the defendants' right to have them produced, to offer in evidence and have the decision of the referee on the question of their materiality and competency. The plaintiff had nothing to do with those questions, which belonged exclusively to the referee to decide.

Bonesteel agt. Lynde and others.

I am clear that the referee decided right in declining to entertain the question, on the motion before him, to strike out the complaint. He had no power to punish for a contempt. The defendants have had no opportunity to present the question to the court until the present;—and it only remains to determine whether the plaintiff is now liable to be dealt with as for a contempt, and if he is, the measure of punishment which should be meted out to him.

Section 390 of the Code provides for the examination of a party as a witness, at the instance of the adverse party, and declares that for that purpose, he may be compelled in the same manner and subject to the same rules of examination as any other witness, to testify, either at the trial or conditionally, or upon commission. §§ 391 and 392 relate to the examination of a party before the trial, and § 393 declares that the examination of a party thus taken, may be rebutted by adverse testimony. § 394 is as follows: " If a party refuse to attend and testify as in the last four sections provided, he may be punished as for a contempt, and his complaint, answer or reply may be stricken out."

The object and intention of § 390, was, in my opinion, to place a party to an action in the same plight and condition with any other witness who is not a party, in relation to giving evidence, at the instance of his adversary ; and to impose the same liabilities and subject him to the like consequences of disobedience, with the superadded one of having his complaint, answer, or reply, stricken out. A witness is bound, not only to appear and testify orally in court, but to produce papers in his possession, to be used as evidence, provided he is properly subpœnaed for that purpose. He is as much bound to do the latter as the former, and his neglect of either is a contempt of court. In the case of Amy agt. Long, (9 *East.* 473,) it was denied by counsel that the *duces tecum* clause in a subpœna to testify was obligatory upon a witness ; but the court held otherwise,—observing that the right to resort to means competent to compel the production of written as well as oral testimony seemed essential to the very existence and constitution of a

court of common law, which receives and acts upon both descriptions of evidence, and could not possibly proceed with due effect without them.

It is contended, however, by the plaintiff's counsel, that it was not in the contemplation of the Legislature, when they enacted the sections of the Code referred to, that a *party* should be compelled by the common subpœna *duces tecum* to bring papers into court; in other words, that the rule which requires a witness, who is not a party, to bring into court and produce papers as evidence upon the trial, does not apply to a party to the action; and the late case of Trotter agt. Latson, (7 *How. Pr. R.* 261,) seems to favor that construction. In that case the decision is put upon the ground that section 388 has made all the provision which was deemed necessary by the Legislature for giving to one party access to, and the right to use in evidence, papers in posession of the adverse party. But it will be observed that the section last mentioned affords a party no means whatever in any case, of using such papers in evidence upon the trial. It only gives an inspection of them, and the right to take copies. Cases are liable to arise where this would be found entirely inadequate to the full developement of the whole truth. An inspection by the court and witnesses at the trial, might be essential to the advancement of justice between the parties. The paper wanted may be the instrument upon which the action or defence is founded, and of which the adverse party, as in this case, has wrongfully possessed himself, and the execution whereof it is necessary to prove. Section 388 authorizes the court or a Judge thereof, to order the party to give to the *other party* an inspection and copy, or permission to take a copy. If he has the right to have his witnesses inspect the paper, with a view to proving its execution on the trial—which is at least questionable—he would be laboring under a great disadvantage, as there is no law to compel the witnesses to examine the paper before the trial; and in case they should refuse, I do not see but he would be remediless.

It seems to me therefore, that this case is not, as the justice, in Trotter agt. Latson, supposes, specially provided for—and

if it is not, then, in the language of the same justice, a liberal construction, such as is generally applied to the provisions of the Code, would justify the conlusion that the language of section 390 imports an obligation upon the party, not merely to answer orally, but to bring with him and produce his books and papers. Nor is the evil of subjecting private and confidential papers to invasion by strangers, to be apprehended any more in the case of a party, than of any other witness. It is always in the discretion of the court to say whether the witness shall produce the papers or documents after he has brought them into court. (Amy vs. Long, *supra*.) It by no means follows that because he shall bring them with him he shall be compelled to produce them in evidence. (The King agt. Dixon, 3d *Burr*. 1687; Miles agt. Dawson, 1 *Esp*. *N*. *P*. *Cas*. 405.)

I have therefore arrived at the conclusion, that the true construction of section 390, is that a party to an action may, at the instance of the adverse party, be compelled by the process of subpœna *duces tecum*, not only to appear at the trial and submit to a personal examination, but to produce papers and books in his possession, precisely as any other witness may be so compelled. The section in terms declares that he may be compelled to testify the same as any other witness. To *testify* is to give evidence; and the reasonable and just interpretation of the words requires that he give evidence in the same manner as other witnesses are bound to do,—not only by submitting to an oral examination, but by the production of such papers in his possession, as the court before whom the action is tried, shall decide are material and proper to be produced by him.

The plaintiff having neglected to produce the lease and inventory in question, after having been duly subpœnaed for that purpose; and standing convicted of having surreptitiously procured the possession of them, with the intention of preventing their introduction in evidence, after he knew that the process of the court had been issued for the purpose of obtaining them, and was on its way to the person having them in custody; and of afterwards refusing to restore them when properly requested; I am constrained to hold that his excuse of having

lost or mislaid them, is inadmissible; and that he must therefore be held and treated as in contempt.

An order may be entered that the plaintiff's complaint be struck out, and that he pay to the defendants ten dollars, costs of this motion. Provided, that if the plaintiff's attorney within ten days after service of notice of this order, shall deliver to the defendants' attorney a stipulation providing that the report of the referee with all subsequent proceedings thereon by the plaintiff, be set aside and a new trial ordered, and agreeing to produce the lease and inventory in question upon such new trial, or in default thereof, that a non suit be entered by the referee, and that no costs shall in any event be charged by or allowed to the plaintiff against the defendants, of the trial already had, but in case the defendants shall be ultimately entitled to the costs of their defence against the plaintiff, then the costs of said trial to be included; in that case the complaint is to be allowed to stand.