## SUPREME COURT.

SILAS BOYNTON, respondent agt. JOHN BOYNTON, appellant.

Where, on the trial, the plaintiff as a witness in his own behalf, on cross-examination, was asked, " Did you at any time previous to the 1st of April, 1860, give the defendant permission to remain on the premises in question for the said term of six weeks, from and after the 1st of April, 1860, himself and family, and also a right to keep his horses and cattle on the premises in question for said term of six weeks ?"

*Held,* that the objection of the plaintiff to the question, that it did not appear whether, if any such license was given, it *was in writing* or by parol, and if in writing, the writing must be produced, which was sustained by the justice, *was clearly error.* A material question calling for material evidence cannot be legally excluded, whether in writing or not.

Where a witness, on examination on the trial, testifies to his knowledge of a certain contract between the parties, and is then asked if he has the contract or agreement in writing with him, to which he answers in the affirmative, but on request of counsel refuses to produce it in court, the court has the power and it is its duty to compel the witness to produce the writing, or punish him for contempt.

*Fourth District, General Term, May,* 1863.

THIS action arose in a justice's court, and was in trespass, on a complaint that the defendant entered certain premises of the plaintiff, in Hebron, Washington county, and wrongfully took and carried away the property of the plaintiff, without his consent, and injured the plaintiff's barn, and took out the stalls, and otherwise damaged the building, and took and carried away personal property to a large amount. The defendant denied these allegations, and set up payment and discharge of all the matters set up in the complaint, and an indebtedness by plaintiff to defendant. The cause was tried by the jus-

tice, without a jury, and a judgment rendered by the justice in favor of the plaintiff for $19.76, damages and costs. The defendant appealed to the county court, who affirmed the judgment, and an appeal was taken from the county court to this court.

BURDICK & BETTS, *for plaintiff*.
TIMOTHY CRONIN and E. D. GILBERT, *for defendant*.

By the court, POTTER, Justice. A great number of questions are discussed in this case, which I do not regard it necessary to examine at any length. The notice of the errors complained of in the notice of appeal is sufficiently broad and comprehensive to raise the questions to be examined. These questions are, the rulings of the justice on the trial. The county judge has furnished us with no reasons for his decision. We are therefore to go back and examine the action of the justice. It will be sufficient to premise, that the farm in question had been purchased by the plaintiff of the defendant, in the spring of 1860, and that the plaintiff also claimed that the personal property in question had been purchased by him of defendant. The plaintiff was a witness on the trial, and had testified that the defendant, on the 14th March, put his horses on the barn floor, and used it as a stable from thence to middle of May; that the defendant had taken down a manger and partition, and took the materials off the premises; this manger and partition he described as to its materials, size and situation, and gave his opinion as to the value thereof, of the damage done to the barn floor, and that the defendant sold boards, slabs and planks that were lying about the premises, that plaintiff bought of him, which he estimated at 1,000 feet, and two hitching posts that were set in the ground. I do not find in the evidence that these posts were taken away, but that the defendant said they were his, and he

should take them. On the cross-examination of the plaintiff as a witness, in answer to the question, " Did you buy all the lumber you have spoken of in your direct examination as having been bought of defendant, all at one time ?" Answer : " I think I did ; I bought it when I bought the farm ; I bought the farm and the lumber with it, all in one bargain; we drew writings when I bought the farm." The defendant then moved to strike out all the testimony relative to the buying of the lumber spoken of by witness, as it appeared by plaintiff's testimony that the bargain was in writing. Plaintiff objected to this on the grounds, first, that the evidence was received without objection. This was not a good objection. It would be monstrous that a party could volunteer evidence in his own behalf, which nobody could anticipate, and then turn round and say, " I got it out before you objected, and now you are obliged to have it as legal evidence." The second objection was : Plaintiff's evidence does not show that the bargain made with the defendant as to the stuff in question was ever reduced to writing. Upon a pretty close criticism, this objection may be a good one. It is possible that the farm and lumber might all have been in one bargain, and not both put into the writing. The justice held it to be good ; and as it is possible it might be, I think this ruling may be sustained

The next question about which the parties differ is as follows : The plaintiff, as a witness on his further cross-examination, was asked : " Did you at any time previous to the 1st April, 1860, give the defendant permission to remain on the premises in question for the said term of six weeks from and after the 1st April, 1860, himself and family, and also a right to keep his horses and cattle on the premises in question for said term of six weeks ?" To this question the plaintiff objected that it did not appear whether, if any such license was given, it was in writing or parol, and if in writing, the writing must be produced ;

also, as immaterial. This objection was sustained by the justice. This was clearly error on the part of the justice. This was a material question; it called for material evidence. Such evidence could not be legally excluded, whether it was in writing or not. If it was in writing, then it should be proved by the writing. There is no evidence that it was in writing; the justice had no right to assume that it was. The party making the objection must, on his part, show it to be in writing, before he could call on the justice to exclude it. The justice, on the previous question we have just examined, admitted just such evidence, because it was not positively certain that it was in writing; and we have held he was justified for the very reason that it did not clearly so appear. Suppose the evidence called for was in reality parol evidence, as, for aught we know, it was, how could a party prove his defence, if the same objection is raised and the justice excluded it? Nobody will doubt that if the defendant had license or permission from the plaintiff to do the things he did do, and was sued for doing, that it was evidence tending to justification. The justice was doubtless misled. If, when the witness had answered the question, it had turned out on cross-examination, or otherwise, that the agreement was in writing, the justice could have stricken out the evidence, unless the writing was produced, because of the rule that the best evidence the nature of the case admitted of must be produced. (2 *Barn. & Adol.*, 208.)

During the trial, as the justice certifies in his amended returns, the plaintiff called a witness by the name of John S. McFarland, who had testified on his cross-examination to some declarations of the plaintiff about the contract for the sale of the premises. While said McFarland was on the stand as a witness, the defendant's counsel asked him if he had a writing in his possession between *Silas and John*. The witness said he had; the defendant's counsel

asked to see it; the witness declined; the defendant's counsel insisted more earnestly, and the witness more positively refused. The defendant's counsel applied to the court to direct the witness to produce the writing or agreement to him or to the court, and the justice refused to direct the witness to produce it. The defendant claims that this is error. The plaintiff criticises this proceeding as too indefinite. The witness was only asked to produce *a writing* between *Silas and John;* it should be, a writing between the parties. Silas and John were the respective christian names of the parties to that action, their surnames being the same—whether brothers, or not, we are not informed. At such a time, in such an action, and in reference to such a matter, it would be worse than trifling to say that there can be any doubt as to who was meant by Silas and John. Besides, the witness put his refusal on no such ground. So, too, this witness had been asked whether he knew the terms of the contract between the plaintiff and defendant, relative to a sale of the premises in question spoken of; the answer to which question he had evaded by stating what he heard the plaintiff say. He then stated that he knew the contract made between the parties; he then further stated that the contract he had spoken of was in writing;·and while he was so testifying, he was asked if he had a writing between Silas and John in his possession; he said he had, and refused to produce it, and the justice did not compel him to produce it. The counsel for the plaintiff say he was only asked for "*a writing*," not for the agreement. No such objection was made at the time. The justice does not put his ruling on such ground, and the whole proceeding squints most strongly of evasive and of unreasonable technical criticism. The reviewing court ought not to countenance this character of trifling, when principles of law and the solemn rights of parties are at stake. In a fair reading of the case as it is, I had no doubts as

to what was meant. Could the parties then present, familiar with all the particulars, incidents and circumstances not written in the case, doubt? I think not. The justice had the power, the paper being in the possession of the witness while in court and testifying, to compel him to have produced it, or, in case of his refusal, to have punished him for contempt. The justice probably did not understand his rights or his authority in this respect, and the conduct of the witness deserves severe censure. We can hardly believe that a case thus presented, with such features of suspicion as to the fairness of the trial, should be sustained if error is apparent in the case. The error first noticed is sufficient to reverse the judgment; the last is sufficient to cast suspicion that the case had not been fairly tried. I do not think we need examine it further.

I think the judgment of the county court, and also that of the justice, should be reversed.