## WERTHEIM and others *v.* CONTINENTAL RY. & TRUST Co.

*(Circuit Court, S. D. New York.* February 17, 1883.)

EVIDENCE—PRODUCTION OF BOOKS AND PAPERS—RIGHTS OF LITIGANTS.

A corporation may be compelled to produce its books and papers in evidence, which may be necessary and vital to the rights of litigants, and considerations of inconvenience must give way to the paramount rights of parties to the litigation.

Motion for Attachment of Witnesses.

*Evarts, Southmayed & Choate,* for complainants.

*Henry L. Burnett,* for defendants.

WALLACE, J. There are informalities in the record upon which this motion to attach witnesses for contempt has been argued, which lead to a denial of the motion. But counsel have desired that the main question involved should be considered and decided as a guide to their future action in the cause. This question is whether the president and secretary of the North River Construction Company, a corporation, can be compelled by a *subpœna duces tecum* to produce books and papers of the corporation in a suit in equity, to which the corporation is not a party, upon the application of one of the parties. The proceeding is opposed upon the authority of several cases in the state courts of New York which deny the right of a party to compel the officers of a corporation to produce its books as evidence in a cause to which it is not a party. The first of these cases is the *President etc., of Bank of Utica* v. *Hillard,* 5 Cow. 153, where a clerk of the bank refused to produce the books. SAVAGE, C. J., said: "The obligation of the witnesses to produce the books upon the *duces tecum* depends on the question whether they were in his possession or under his control;" and the obligation was denied because he was a mere clerk of the corporation. The same case was before the court again (5 Cow. 419) upon a motion to attach the cashier of the bank, who had refused to produce the books under the subpœna, and was denied because the bank could not be required to produce evidence against itself as a party to the action. Both of these cases, by the strongest implication, concede the power to compel the production of the books by an officer when the corporation is not a party. Thirty years later the point arose again in *La Farge* v. *La Farge Fire Ins. Co.* 14 How. 26, upon a motion for an attachment against the president of the defendant for refusing to produce its books under a subpœna *duces tecum,* and the motion was denied upon the authority of the cases in 5

Cow. The precedent thus established was recognized incidentally or directly in several subsequent cases, and was assumed to apply whether the corporation was a party or not a party to the suit. The question was never considered by the courts of last resort, and was put at rest by section 868 of the Code of Civil Procedure, which expressly conferred the right theretofore denied.

As this suit is in equity, the present motion is not affected by the provisions of the Code of Civil Procedure, and the court is asked to apply the doctrine of the antecedent decisions of the state courts. No authority is found in any decisions of the federal courts denying the right to compel corporations to produce evidence which may be necessary and vital to the rights of the litigants. On principle it is impossible to suggest any reason why a corporation should be privileged to withhold evidence which an individual would be required to produce. It may be inconvenient, and sometimes embarrassing, to the managers of a corporation to require its books and papers to be taken from its office and exhibited to third persons, but it is also inconvenient and often onerous to individuals to require them to do the same thing. Considerations of inconvenience must give way to the paramount right of litigants to resort to evidence which it may be in the power of witnesses to produce, and without which grave interests might be jeoparded, and the administration of justice thwarted.

The researches of counsel have been unavailing to find any decisions of the courts of other states which sanction the rule thus maintained by the courts of New York. Notwithstanding these cases, it is believed to have been the common practice in this state to subpœna officers as witnesses to produce the books of their corporations in actions between third persons. In other states, so far as is known, the right to do so has never been controverted. There has been strenuous opposition on the part of corporations to the production of their papers and records in suits to which they were not parties. The effort of telegraph companies to maintain the privacy of their messages is an illustration, (see *Henisler* v. *Freedman,* 2 Pars. Select Cas. 274; *U. S.* v. *Babcock,* 3 Dill. 566,) but immunity has never been claimed upon the ground now taken.

Why should not the officers of a corporation be required to produce the books of the corporation as witnesses when the books are necessary evidence? The corporation can only act through its officers. The suggestion that the books are in the legal custody of the corporation, and not of its officers, may be theoretically correct. If tech-

nically true, it is not an objection to compelling the officers to produce them. As said by Lord ELLENBOROUGH, in *Amey* v. *Long*, 1 Campb. 17: "Although a paper should be in the legal custody of one man, yet if a *subpœna duces tecum* is served on another, who has the means to produce it, he is bound to do so."

In *Crowther* v. *Appleby*, L. R. 9 C. P. 27, Lord DENMAN asks: "When documents are in the possession of a company, who but the secretary can be subpœnaed to produce them?" Courts of equity have always permitted the officers of corporations to be made parties to bills of discovery, upon the theory that they are the custodians of the books and documents of the corporation, and may be compelled to produce them and answer to the interrogatories propounded.

As has been indicated, the cases in 5 Cow. have been misapplied by the later cases in the courts of New York, and do not sanction the precedent which they are asserted to establish. This court must refuse to follow these later decisions, deeming them to be unsupported by precedent, an innovation upon the rule generally recognized, and opposed to good sense.

---

The production of documentary evidence in which a party to a cause has an interest, may, at common law, (independent of the auxiliary remedy by bill of discovery in chancery,) be had in three ways: (1) By an order for inspection; (2) by a notice to produce; (3) by a *subpœna duces tecum*;—the first used where the writings are required before the trial takes place or the pleadings are completed; the last two where the writings are wanted at the trial. The purpose of this note is to give a concise statement of the rules governing the *subpœna duces tecum*, but as an introduction to these it is proposed to present a brief sketch of the two other methods just stated.

### I. The Order for Inspection.

The English courts of common law early exercised a power to make an order for the inspection of writings in the possession of one party to a suit in favor of the other,(a) in order to assist the plaintiff in drawing his declaration,(b) or the defendant in framing his pleas.(c) A few examples of this practice will suffice. A tenant of a corporation was assessed an increased rent by a jury under the provisions of a statute permitting this to be done when the value of the lands should be increased. He indorsed the finding of the jury on his lease. The corporation afterwards brought an action for the increased rent, and, in order to frame its declaration, asked to be allowed

(a) Mayor of Arundel v. Holmes, 8 Dowl. 118, (1839;) Woolmer v. Devereux, 2 M. & G. 758; King v. King, 4 Taunt. 666; Browning v. Aylwin, 7 B. & C. 204.

(b) Mayor of Arundel v. Holmes, 8 Dowl. 118; Rowe v. Howden, 4 Bing. 539; Blakey v. Porter, 1 Taunt. 386.

(c) Raynor v. Ritson, 6 B. & S. 888, (1865;) Reid v. Coleman, 2 C. & M. 456.

to take a copy of the indorsement, and this was ordered by the court.(*d*)   An action was brought on a policy of marine insurance for a constructive total loss.   The defendant applied to inspect all the papers relative to the matters in issue, including letters between the captain and the plaintiff, and it was so ordered.(*e*)   An action was brought against a broker for negligence in making a contract, and, on application, the court compelled him to produce his books in order to enable the plaintiff to inspect and take a copy of the contract.(*f*)   Where an agreement was entered into between two persons, of which there was but one copy, the party who retained it held it as trustee for the other, and would be compelled to permit the other to inspect and take a copy of it.   Thus, where only one copy of a lease is drawn up and executed, and is delivered to the lessee, the lessor in a suit for the rent may obtain inspection of it;(*g*) and also where two parties enter into a partnership agreement drawn up and signed by the plaintiff, but remaining in the custody of the defendant.(*h*)

The practice in the common-law courts at first was to order inspection of a document only where there was but one copy of the document, and the party in whose possession it was, held it as a *quasi* trustee for the other party.   But the word "trustee" was not strictly construed, nor was it used in any technical sense, and hence it was not long before the rule was extended so as to include every case where the party seeking to inspect had an interest in the document.(*i*)   Therefore it was not essential that there should be an agreement in writing entered into between the parties.   Where the agreement consists of a series of letters, or of a written proposal on one side and an oral acceptance on the other, and the writer of the letters, who is sought to be charged with a contract arising out of them, has no copies, he has such an interest in them as to give him a right to ask to inspect them and take copies.   So of the case of an offer by word of mouth, and an acceptance of it in writing.   The writer surely has a right to say, "Let me see my letter, in order that I may know what contract I have entered into."(*j*)   An order for the inspection of a document was always granted where the circumstances called for it; as, where the defendant suggested that it was a forgery or had been altered since it was signed, or made affidavit that he had no recollection of ever having executed such a document.(*k*)   Therefore the usual practice was for the party applying for the inspection to make affidavit attacking its genuineness.(*l*)   But even this was not always required.   But, though a party has a right to inspect documents sustaining his own side of the case affirmatively, he has no such right as to those which form part of his adversary's case; he cannot call for those which, instead of supporting his title, defeat it by entitling his adversary.(*m*)

In *Avery* v. *Langford*,(*n*) a plaintiff in ejectment sought to inspect and

(*d*) Mayor of Arundel v. Holmes, 8 Dowl. 118, (1839.)

(*e*) Raynor v. Ritson, 6 B. & S. 888, (1565;) Lawrence v. Ocean Ins. Co. 11 Johns. 245.

(*f*) Browning v. Aylwin, 7 B. & C. 204, (1827.)

(*g*) King v. King, 4 Taunt. 666, (1812.)

(*h*) Morrow v. Saunders, 1 Brod. & B. 318, (1819.)

(*i*) Price v. Harrison, 8 C. B. (N. S.) 617, (1860.)

(*j*) Id.

(*k*) Woolmer v. Devereux, 2 Man. & Gr. 758, (1841.)   In the common pleas it was held that discretion of the judge in such cases was not reviewable on appeal.

(*l*) Jackson v. Jones, 3 Cow. 17, (1824.)

(*m*) Brougham, C., in Bolton v. Corp. of Liverpool, 1 Mylne & K. 88, (1833 )

(*n*) 21 L. J. (Q. B.) 217, (1852.)

take copies of certain deeds in order to prove his title to the premises. It appeared that the assignee of certain premises for the residue of a term became seized in fee of adjoining premises, and demised both to R. and S., and that subsequently the interest of the assignee in both was transferred to the defendant, who, after the determination of the term of R. and S., retained possession of the leasehold premises. The application was made by the plaintiff as reversioner, and he asked for an order to inspect the conveyance by which the leaseholds were assigned and the freeholds conveyed to the defendant, alleging that the latter had obliterated the boundaries between the two, and that the premises now sought to be recovered formed part of the leaseholds. It was held that the plaintiff was entitled to inspect the assignment of the term, but not such part of the deed as related to the conveyance of the freeholds. And where an instrument was executed in duplicate, each party keeping a copy, and one of the parties lost his copy, the court refused to compel the other to produce his copy.(o)

Nor will the party succeed where the inspection is asked, not for the purpose of his own case, but to find out his adversary's. Thus, in an action against executors upon an agreement under which the plaintiff claimed certain arrears of an annuity alleged to be due to him from the testator, the defendants pleaded that after the making of the agreement, and before the accruing of the causes of action, it was agreed between the testator and the plaintiff that the agreeement should be, and the same accordingly was, rescinded, and that the testator should be, and he accordingly was, exonerated from all further performance thereof. The court refused to grant the plaintiff leave to inspect a supposed letter, upon which the plea was founded, upon an affidavit stating that the plaintiff had written some letter to the testator relating to the annuity, the words of which he could not remember, and also his belief that the defendant intended to rely on that letter as constituting the agreement alleged in the plea, but denying that such agreement ever was made; the inspection being sought, not in order to support the plaintiff's own case, but to see by what means a defense could be made out against him. The grounds upon which the judgment proceeded were that there was no certain allegation that there was any such document in existence, and that it was a mere fishing application.(p) But the fact that the document discloses the case of the party in whose hands it is, is irrelevant, provided it also supports the case of the party asking to inspect it.(q)

The English statute(r) provides that the common-law judges should have power, on application made, to compel the opposite party to allow the party making the application to inspect all documents in the custody or under the control of such opposite party relating to the action, and, if necessary, to take examined copies of the same in all cases in which, previous to the passing of the act, discovery might have been obtained in equity. Under this statute it was held that the party must show by affidavit (1) that an action or other proceeding is pending; (2) that certain documents are in the control

(o) Street v. Brown, 1 Marsh. 610.
(p) Shadwell v. Shadwell, 6 C. B. (N. S.) 679, (1859.)

(q) London Gas-light Co. v. Chelsea, 6 C. B. (N. S.) 411. (1859.)
(r) 14 & 15 Vic. c. 99, § 6.

of the opposite party relating to such action; (3) that the applicant would be able, by a bill of discovery, to obtain an inspection of the documents.(*s*)

The American courts were less ready to assume jurisdiction in such cases,(*t*) and chancery had generally to be resorted to for relief of this character. Within recent years, however, statutes have been enacted in most of the states giving courts of common law power in proper cases to order the inspection of documents; and the bill of discovery is not now resorted to, except under special circumstances. The wording of these statutes generally is that the courts of law shall have power, in such cases as shall be deemed proper, to compel any party to a suit pending therein to produce and permit the opposite party to take copies of such writings in his possession as are material to his case.

## II. The Notice to Produce.

Where any paper which is *in possession of the opposite party* is necessary to be produced at the trial, notice may be given to the party in whose possession it is to produce it, and, if he neglects to do so, parol or secondary evidence may be given of its contents. This does not compel him to produce the document; it only lays a foundation, if he fails to do so, for the introduction of secondary evidence, after he has proved the existence of the original.(*a*)

In three cases it is said notice to produce is not necessary: (1) Where the instrument to be produced and that to be proved are duplicate originals; (2) where the instrument to be proved is itself a notice,—as a notice to quit, a notice of protest, etc.; (3) where from the nature of the action the defendant has notice that the plaintiff intends to charge him with possession of the instrument,—as, for example, in trover for a bill of exchange. (*b*) The notice may be directed to the party or his attorney, and may be served on either; and this should be done previous to the commencement of the trial. The notice to produce must be reasonably specific. Thus, a notice to produce " all letters, papers, and documents touching the bill of exchange mentioned in the declaration, and the debt sought to be recovered," has been held too general;(*c*) as have a notice to produce " letters and copies of letters, and all books relating to this cause,"(*d*) and one to produce "all books, etc., relating to the matter in controversy."(*) But a notice to produce " all letters written by the party to and received by the other, between the years 1837 and 1841, inclusive," was held sufficient to entitle the party to call for a particular letter.(*e*)

## III. The Subpœna Duces Tecum.

§ 1. SUBPŒNA DUCES TECUM—OBJECT AND HISTORY OF THE WRIT. The writings in a man's possession are as much liable to the calls of justice as the faculties of speech and memory are. There can be no difference in principle between obliging a man to state his knowledge of a fact and compelling him to produce a written entry in his possession which proves the

(*s*) Hunt v. Hewitt, 7 Ex. 236, (1852.)
(*t*) See Bank of Utica v. Hilliard, 6 Cow. 62, (1826.)
(*a*) Sharpe v. Lambe, 3 P. & D. 454
(*b*) Greenl. Ev. 561.

(*c*) France v. Lucy, Ry. & M. 341.
(*d*) Jones v. Edwards, 1 McCl. & Y. 139.
*Stalker v. Gaunt, 12 N. Y. Leg. Obs. 125.
(*e*) Morris v. Hauser, 2 M. & Rob. 392; Rose v. King, 5 Serg. & R. 241.

same fact.  Not only a man's estate, but even his liberty or life, may depend upon written evidence which is the exclusive property of a stranger.(f) If a person, *not a party to the cause*, have in his possession any writings that either party may consider essential to be introduced in evidence at the trial, such writings, etc., are brought to the court through the medium of a *subpœna duces tecum*.  The *subpœna duces tecum* is the only mode in many cases to obtain the production of a document in the hands of a third party at the trial.  In *Bank v. Lewis*(g) an application having been made to the vice-chancellor to have a solicitor ordered to produce a certain deed in evidence at the trial, the motion was refused, the vice-chancellor saying: "The right of the solicitor to the possession of the deed is altogether collateral to this cause; and in this suit I have no jurisdiction to compel him to produce it.  You must treat him as you would treat any other witness in possession of a deed."   Still, it was early laid down that the witness was none the less bound to obey the writ, because there was another way of obtaining the documents called for by the *subpœna duces tecum.*(h)     No trace of the use of this writ by the common-law courts of England is to be found in the books earlier than the time of Charles II.  But, as said by Lord ELLENBOROUGH, C. J., in 1808: "The right to resort to means competent to compel the production of written as well as oral testimony seems essential to the very existence and constitution of a court of common-law, which receives and acts upon both descriptions of evidence, and could not possibly proceed with due effect without them.   And it is not possible to conceive that such courts should have immemorially continued to act upon both without great and notorious impediments having occurred, if they had been furnished with no better means of obtaining written evidence than what the immediate custody and possession of the party who was interested in the production of it, or the voluntary favor of those in whose custody the required instruments might happen to be, afforded.   The courts of common law, therefore, in order to administer the justice they have been in the habit of doing for so many centuries, must have employed the same or similar means to those which we find them to have in fact, used from the time of Charles II.; at least, according to the entries before referred to.   *   *   *   They may be taken, therefore, as known and recorded special instances of a general practice to compel by writ the production of necessary written testimony at the trial of suits at law."(i)     This writ can only be used to compel the production of documentary evidence; *i. e.*, books, papers, accounts, and the like.   It will not, therefore, issue to bring into court "patterns" for a stove.(j)

§ 2. BY STATUTE, WRIT MAY RUN TO PARTIES TO SUIT.   In some of the states, the courts have construed the statutes on the subject so as to compel the parties to a suit to produce documents under a *subpœna duces tecum*. The New York Code(a) provided that a party might be compelled to testify as a witness "in the same manner and subject to the same rules of examination as any other witness."   Notwithstanding that another section(b) gave the court authority to order either party to allow the other an inspection

(f) Starkie, Ev. 113.
(g) 6 Madd. 29a.
(h) Corsen v. Dubois, 1 Holt, 239.
(i) Amey v. Long, 9 East, 483.

(j) In re Shepherd, 3 Fed. Rep. 12.
(a) Section 390.
(b) Section 388.

or documents in his possession, it was held that under the first section a party to an action might, at the instance of the adverse party, be compelled by a *subpœna duces tecum* not only to appear at the trial and submit to an oral examination, but to produce books and papers in his possession, precisely as any other witness may be so compelled. This decision, which conflicted with an earlier ruling under the same sections,(c) was reached by construing the word "testify" to mean not only the giving of oral evidence, but the production of evidence of any kind in the possession of the party;(d) and the same view has been taken of a somewhat similar statute in New Jersey,(e)˙and under the same sections it is held that a party to an action may by a *subpœna duces tecum* be compelled to produce documents in any examination had before trial,(f) and if such a subpœna is issued and served on the party, it compels him to attend and be examined, even though it does not reach his books and papers.(g).

§ 3. PARTY MUST OBEY WRIT—QUESTION OF LAWFUL EXCUSE FOR COURT. The *subpœna duces tecum* calls on the party to appear at the trial, and also bring the papers, etc., with him. Therefore he must obey the command to appear, even though the papers may be immaterial to the case. That is to be decided by the court. Where the witness did not appear, and on an attachment being applied for, filed affidavits showing that the instrument required to be produced was immaterial to the case, "it is unimportant in this proceeding," said LITTLEDALE, J., "so far as the witness is concerned, whether the instrument which the subpœna required to be produced was or was not material. He was bound to attend according to the exigency of the writ."(h) The *subpœna duces tecum* is compulsory upon the person to whom it is addressed. It is for the court to say whether the witness has any lawful excuse for refusing to obey its commands, (i) and if the witness declines to produce it on any ground, the court will examine into that ground, and for this purpose the witness must submit the document to the inspection of the court.(j) "The *subpœna duces tecum* is a process of compulsory obligation on the witness to produce the deed or writing required of him, if he has it in his possession and has no lawful excuse for withholding it, of the validity of which excuse the court is the judge. The court will exercise its discretion in deciding what papers should be produced, and under what qualifications as respects the interest of the witness in the paper."(k) But before the court will order the witness to

(c) Trotter v. Latson, 7 How. Pr. 261.

(d) Bonesteel v. Lynde, 8 How. Pr. 226; affirmed by the full court, Id. 352; People v. Dyckman, 24 How. Pr. 222; Mitchell's Case, 12 Abb. Pr. 249; Jarvis v. Clerk, 12 N. Y. Leg. Obs. 129.

(e) Murray v. Elston, 23 N. J. Eq. 212.

(f) Woods v. De Figamere, 16 Abb. Pr. 159; De Barry v. Stanley, 48 How. Pr. 349; Hauseman v. Stealing, 61 Barb. 347; Smith v. McDonald, 50 How. Pr. 519; Central National Bank v. Arthur, 2 Sweeney, 194

(g) Smith v. McDonald, 50 How Pr. 519; 52 How. Pr. 117; Martin v. Spofford, 3 Abb. N. C. 125; De Barry v. Stanley, 5 Daly, 412; Havemeyer v. Ingersoll, 12 Abb. Pr. 301; People v. Dyckman, 24 How. Pr. 222; Jarvis v. Clark, 12 N. Y. Leg. Obs. 129; Mitchell's Case, 12 Abb. Pr. 249;

Morrison v. Sturgis, 26 How. Pr. 174; Lane v. Cole, 12 Barb. 680; Lefferts v. Brampton. 24 How. Pr. 257; Brett v. Bucknam, 32 Barb. 655. These cases are very conflicting on this point, but the majority of them, especially the latter ones, sustain the text.

(h) Doe v. Kelly, 4 Dowl. 273; Key v. Russell, 7 Dowl. 693.

(i) Amey v. Long, 9 East, 483; Holtz v. Schmidt, 2 Jones & Sp. 23; Bull v. Loveland, 10 Pick. 9; Chaplain v. Briscoe, 5 Sm. & M. 198; Corsen v. Dubois, 1 Holt, 239; Field v. Beaumont, 1 Swanst. 209; U. S. v. Hunter, ante, 712.

(j) Mitchell's Case, 12 Abb. Pr. 249; Doe v. Clifford, 2 C. & K. 448.

(k) In re O'Toole, 1 Tuck. 39.

produce a document called for by a *duces tecum*, it must be shown conclusively that the witness has the power to comply with it. It is not sufficient that there is such evidence as would be competent to be submitted to a jury upon the question.(*l*) Where it is found that a party subpœnaed to produce documents has procured the possession of them in order to prevent their being introduced in evidence by others, his excuse for not producing them, that he has lost or mislaid them, will not be regarded.(*m*) It is no ground for refusing to produce them, that the papers are private;(*n*) but there are a number of grounds on which the witness, coming into court with the documents in his possession, will be excused from producing them. These grounds will be stated in the next sections.

§ 4. DOCUMENTS EXEMPT FROM PROCESS—PUBLIC DOCUMENTS. Thus a public officer will not be required by *subpœna duces tecum* to bring public documents in his custody into court where official copies can be had,(*o*) for this would cause great and unnecessary inconvenience, without any corresponding advantage.(*p*) So it is a good objection to producing the papers asked for that they are of a public nature and cannot be exhibited without injury to the public.(*q*)

§ 5. SAME—CRIMINAL CHARGE OR PENALTY. So it is a good answer to the call for their production that obedience to the writ might subject the witness to a penalty or forfeiture, or to a criminal charge.(*r*)

§ 6. SAME—PAPERS AFFECTING CIVIL RIGHTS. The English rule is that a witness is not compelled to produce title deeds or other documents belonging to him when their production might prejudice his civil rights;(*s*) but though he may decline to produce a document of this character, and cannot be compelled to state its contents, yet he must disclose the date and the names of the parties in order to identify it.(*t*) In the United States "the weight of authority is in favor of the rule that a witness may be called and examined in a matter pertinent to the issue, where his answers will not expose him to criminal prosecution or tend to subject him to a penalty or forfeiture, although they may otherwise adversely affect his pecuniary interest; and * * * there is no difference in principle between compelling a witness to produce a document in his possession under a *subpœna duces tecum* in a case where the party calling the witness has a right to the use of such document, and compelling him to give evidence where the facts lie in his own knowledge."(*u*) In an early case in South Carolina, a security on a sheriff's bond was compelled to produce the books of his principal, who had died insolvent, notwithstanding he was apprehensive of danger to himself from the production, in the way of suit on the bond.(*v*)

(*l*) Hall v. Young, 37 N. H. 134.

(*m*) Bonesteel v. Lynde, 8 How. Pr. 226 652.

(*n*) Burnham v. Morrissey, 14 Gray, 240; In re Dunn, 9 Mo. App. 261.

(*o*) Delaney v. Regulators, 1 Yeates, 403; and see Shippen v. Wells, 2 Yeates, 260.

(*p*) Corbett v. Gibson, 16 Blatchf. 334.

(*q*)Reg. v. Russell, 7 Dowl. 693; Gray v. Pentland, 2 S. & R. 23.

(*r*) U. S. v. Reyburn, 6 Pet. 367; Cosen v. Dubois, 1 Holt, 241, note.

(*s*) Doe v. Date, 3 Q. B. 609. The rule, however, does not extend beyond the evidence of title. Starkie, Ev. 111, so lays it down. And see Corsen v. Dubois, 1 Holt, 241, note; Roberts v. Simpson, 2 Starkie, 203; Miles v. Danson, 1 Esp. 405.

(*t*) Doe v. Clifford, 2 C. & K. 448.

(*u*) Shaw, C. J., in Bull v. Loveland, 10 Pick. 9.

(*v*) Hawkins v. Sumter, 4 Dessau. 446.

**§ 7. SAME—PRIVILEGED COMMUNICATIONS.** An attorney cannot, by a *subpœna duces tecum,* be compelled to produce papers of his clients in his hands, any more than he can be compelled to testify as to confidential communication between them.(*a*)   But an ordinary agent is not within this rule, and may be called on to produce his principal's papers in his possession.(*b*)   Still, all privileged statements are within the rule; *e. g.,* the books of a physician containing entries of information acquired by him in attending patients in a professional character, and which information was necessary to enable him to prescribe for such patients.(*c*)

**§ 9. TELEGRAMS IN HANDS OF COMPANY.** On the ground of privileged communications it has been attempted by the officers of telegraph companies to withhold copies of dispatches in their hands when required as evidence in courts of justice. This attempt, however, has not succeeded. It is held that telegraph messages in the hands of officers of the company are not privileged communications; and they must be produced when ordered by a *subpœna duces tecum,* any rule or by-law of the corporation to the contrary notwithstanding.(*d*)   The statute subjecting the agents of telegraph companies to a penalty for disclosing the contents of any private dispatch to any person other than the person to whom it is addressed, or his agent,(*e*) or a statute making a person liable who unlawfully exposes the secrets of a telegraph office,(*f*) does not prohibit such a disclosure when required as evidence in a judicial proceeding.

**§ 10. PAROL EVIDENCE OF PRIVILEGED DOCUMENT INADMISSIBLE.** Where a witness refuses to produce a document and is justified in so doing, for any of the reasons which we have seen, he cannot be compelled to give parol evidence of the contents.(*g*)   The court will receive such evidence if he gives it willingly, but will not compel him to give it.(*h*)   Where the papers required as evidence in a trial are in the possession of a person who is not obliged to produce them under a *subpœna duces tecum,* the party desiring them may by other witnesses give secondary evidence of their contents, if he has endeavored to obtain their production by subpœna, for he has done everything in his power to obtain the best evidence.(*i*)   So, too, parol evidence is admissible where a witness, in fraud of the subpœna, has transferred the document to another, and for this reason does not produce it.(*j*)   But parol evidence is not admissible where the document is not produced, and cannot be compelled because the subpœna was served too late.(*k*)

**§ 11. WITNESS MAY BE ORDERED TO READ OR EXPLAIN PAPERS.** To simply produce the books or papers called for is not all the witness may be asked to do; he may be compelled to read out of them specific items or charges to

---

(*a*) Rex v. Dixon, 3 Burr. 1687; Durkee v. Leland, 4 Vt. 612; Copeland v. Watts, 1 Starkie, 95; Davies v. Waters, 9 M. & W. 609; Newton v. Chaplin, 19 L. J. (U. S.) 374.

(*b*) Earl of Falmouth v. Moss, 11 Price, 455.

(*c*) Mott v. Consumers' Ice Co. 52 How. Pr. 244.

(*d*) Ex parte Brown, 72 Mo. 83; Henisler v. Freedman, 2 Pars. Sel. Cas. 274; U. S. v. Babcock, 3 Dill. 566; U. S. v. Hunter, ante, 712.

(*e*) Ex parte Brown, 72 Mo. 83.

(*f*) Hensler v. Freedman, 2 Pars. Sel. Cas. 274.

(*g*) Davies v. Waters, 9 M. & W. 609; Hibberd v. Knight, 2 Ex. 11; Marston v. Downes, 6 C. & P. 381.

(*h*) Hibberd v. Knight, 2 Ex. 11.

(*i*) Ditcher v. Kenrick, 1 C. & P. 161; Gilbert v. Ross, 7 M. & W. 102; Hibberd v. Knight, 2 Ex. 11.

(*j*) Leeds v. Cook, 4 Esp. 256.

(*k*) Hibberd v. Knight, 2 Ex. 11

# 726

which he has referred, in order that they may be incorporated in the evidence, as where an examination before trial is being had. "May it be made the duty of the witness to read the charges or state the contents of the book, or has he discharged all the duty that can be required of him when he has produced the book and said, this is my book of accounts? It is not doubted he is obliged to go further and to state whether it contains a particular account, in whose handwriting it is, on what page it commences, where it ends, to what part of the subject of the action it relates, and other similar questions, to test its pertinency. But it is said you cannot ask him to read from it. Why not? If not he, whom can you ask? Not who may volunteer or offer to read it, but who can be required to read it; for read it must be if it is to go into the deposition. How, then, are you to get the evidence if the witness refuses and cannot be compelled, and no other person, under objection, may read it?"(*l*) But where the witness is simply ordered to produce his books, his refusal to leave them in the custody of the court is not a contempt.(*m*)

§ 12. WITNESS NEED NOT BE SWORN OR TESTIFY. A *subpœna duces tecum* has two distinct objects—one, the appearance of the witness at the trial to testify in the cause if called upon; the other, the production of the papers which it describes. In the English courts it was always held that one of these objects might be enforced without the other. Thus it was held that a person producing documents under the subpœna need not be sworn if the party by whom he was called did not wish him to be sworn, but only wanted the documents in his hands produced, even though the opposite party might desire to cross-examine him.(*n*) The same rule has been laid down in South Carolina.(*o*) In Alabama it has been ruled that where a witness has been subpœnaed to testify generally, as well as to bring papers into court, the party at whose instance the subpœna issues may require the production of the papers without introducing the witness.(*p*) In New York it has been ruled that it is the witness' privilege to be sworn, if he desires to, for the purpose of enabling him to state on oath any reason why he should not be compelled to produce the document.(*q*) On the other hand, it is held in New Jersey to be a fatal defect in the writ that it contains no words directing them to testify, but simply requires him to appear at the trial and bring the documents with him. The power of a court, it is said, to compel the attendance of a witness, is derived from the purpose for which he is to come, viz., to give evidence in some action, suit, or proceeding pending before it.(*r*) Where a witness has a writing in his possession in court he may be compelled to produce it, though he has not been subpœnaed to do so.(*s*) The court should require its production in order to determine its materiality as evidence; and it is error to refuse to require its production because it may not then appear to be material evidence.(*t*)

§ 13. HOW PAPERS TO BE DESCRIBED IN SUBPŒNA. The papers called for must be specified in the subpœna with such certainty as is practicable under all

(*l*) People v. Dickman, 24 How. Pr. 222.

(*m*) Ludlow v. Knox, 7 Abb. Pr. (U. S.) 411; Morley v. Green, 11 Paige, 240.

(*n*) Perry v. Gibson, 1 Ad. & El. 48, (1834;) Sammers v. Moseley, 2 Cromp. & M. 477.

(*o*) Sherman v. Barrett, 1 McMull. 163.

(*p*) Martin v. Williams, 18 Ala. 190.

(*q*) Aikin v. Martin, 11 Paige, 499. And see Hall v. Young, 37 N. H. 134.

(*r*) Murray v. Elston, 23 N. J. Eq. 212.

(*s*) Boynton v. Boynton, 25 How. Pr. 490.

(*t*) Boynton v. Boynton, 16 Abb. Pr. 87.

the circumstances of the case, so that the witness to whom the subpœna is addressed may be able to know what is wanted of him.(*u*)   A call in a subpœna directed to a telegraph company for all messages sent during a certain term by certain parties specified by name, to certain other parties specified by name, was held sufficient.(*v*)   But a similar call in a subpœna issued from a state court in the same city was held insufficient.(*w*)   In the principal case of *U. S.* v. *Hunter*,(*x*) the description required in the writ is very clearly stated.   A call to produce "all papers touching or concerning the matter in dispute" is insufficient.(*y*)   A *subpœna duces tecum* from the federal courts should be tested in the name of the chief justice of the United States,(*z*) and should require the production of the papers before a "court," not a "judge."(*a*)   The subpœna may command the party to whom it is addressed to *make search* for the witness required, and it is his duty to make seasonable efforts to produce the papers by doing so.(*b*)   But it need not state that the documents called for are material to the case.(*c*)   The witness served with a *subpœna duces tecum* may be required to make a return to the writ before the case is opened.(*d*)   No greater fee is allowed under the New York Code(*e*) to a witness under a *duces tecum* than one under an ordinary subpœna.(*f*)

§ 14.   The Books of Corporations—Rule in New York.   The courts of New York, rigidly adhering to the rule that a party cannot be compelled to furnish evidence against itself, refused to compel an officer of a corporation to produce its books in a suit to which the corporation was a party.   In the earliest case on this point, a bank brought an action on a promissory note, to which the defense of usury was set up.   To show the usury, the defendant served the cashier with a *subpœna duces tecum* to produce the books.   He refused to obey it, and a motion for an attachment was denied.   "The course," said the court, "for proving the books or papers of a bank where it is the adverse party, is to give notice to produce them, and on its non-compliance to show the contents by inferior evidence, as in other cases.   The effect of this motion would be to compel a party to produce evidence against himself.   *   *   *   The cases in which the production of papers may be coerced by subpœna are where they are the property of a competent witness, or at least where they do not belong exclusively to the adverse party.   When he can say 'These are my papers,' we will not compel one who happens to have the temporary possession of them, in the right of the party, to produce them on subpœna."(*g*)   It was ruled that a "joint-stock company was not a corporation within this rule. and entitled to its immunities.(*h*)   Since then the New York Code of Civil Procedure provided as follows:(*i*)   The production upon a trial of a book or paper belonging to or under the control of a corporation may be compelled in a like manner as if it were in the hands or under the control of a natural

(*u*) United States v. Babcock, 3 Dill. 566.
(*v*) Id.
(*w*) Ex parte Brown, 72 Mo. 83.
(*x*) Ante, 712.
(*y*) Re O'Toole, 1 Tuck. 39.   See ante as to description of papers in "notice to produce."
(*z*) Corbett v. Gibson, 16 Blatchf. 334.
(*a*) Id.
(*b*) United States v. Babcock, 3 Dill. 566.
(*c*) Re Dunn, 9 Mo. App. 255.

(*d*) Treasurer v. Moore, 3 Brev. (S. C.) 550.
(*e*) Section 852.
(*f*) Re Corwin, 6 Abb. N. C. 437.
(*g*) Bank of Utica v. Hilliard, 5 Cow. 419, (1826;) La Faye v. La Faye Fire Ins. Co. 14 How. Pr, 26; Central Nat. Bank v. White, Jones & Sp. 237; Morgan v. Morgan, 16 Abb. Pr. (N. S.) 291.
(*h*) Woods v. De Figamere, 16 Abb. Pr. 159.
(*i*) Section 688.

person. For that purpose, a *subpœna duces tecum*, or an order made as pre-
scribed in the last section, as the case requires, must be directed to the presi-
dent or other head of the corporation, or to the officers thereof, in whose cus-
tody the book or paper is." This law, it has been held, applies to foreign
corporations doing business in the state of New York.(*j*) But previous to
this provision the New York rule was not the rule everywhere. In *Wertheim*
v. *Continental Trust Co.*(*k*) the subject was by a United States judge, sit-
ting in New York, examined independently of the provision in the Code
just recited, and he came to the conclusion that a corporation was com-
pellable to produce its books and papers under a *subpœna duces tecum*, sub-
ject to the same duties and privileges as an individual. "No authority,"
it was said, " is found in any decisions of the federal courts denying the right
to compel corporations to produce evidence which may be necessary and vital
to the rights of litigants. On principle it is impossible to suggest any reason
why a corporation should be privileged to withhold evidence which an indi-
vidual would be required to produce."

§ 15. PARTY HAVING POSSESSION WITHOUT LEGAL CUSTODY. Although a
document be in the legal custody of one man, yet if the subpœna is served on
another in whose possession it is, or who has the means to produce it, he is
bound to do so.(*l*) Thus a solicitor has been ordered to produce papers whose
legal custody was in the assignee in bankruptcy.(*m*) In *Bank of Utica* v. *Hil-
liard* (*n*) the suit was on a promissory note of a bank against the indorsers,
the defense being that the note was usurious. To prove this defense, a clerk
in the bank was served with a *subpœna duces tecum* to produce the bank
books. It was held that he was not bound to obey it. "His obligation to
produce the books," said SAVAGE, C. J., "depends on the question whether
they were in his possession and under his control. He was the mere clerk of
the plaintiff, and in that character had no such property in or possession of
the books as imposed the obligation to bring them. They were under the
control of the cashier, who might forbid their removal or place them beyond
the reach of the witness."(*o*) This has been changed in New York, as we
have seen, by statute. Under the New York Code,(*p*) the party on whom the
*subpœna duces tecum* is served sufficiently obeys it if the documents are pro-
duced by a subordinate officer, who is able to identify them, and to testify re-
specting the purposes for which it is used. If the personal attendance of a par-
ticular officer is requested, a subpœna without the *duces tecum* clause must
also be served on him. Section 868 of the New York Code has been held to
give so ample a means of obtaining the production of the books of a corpora-
tion, as to make an order to inspect unnecessary.(*q*)

§ 16. WHEN BOOKS ARE "IN CUSTODY OF" OFFICER OF CORPORATION.
The New York Code, as we have seen, requires that to compel the production
of books or papers of a corporation the subpœna be directed to the officer "in

(*j*) United States v. Tilden, 18 Alb. L. J. 416.
(*k*) Ante, 716.
(*i*) Amey v. Long, 1 Comp. 14.
(*m*) Corsen v. Dubois, 1 Holt, 239.
(*n*) 5 Cow. 152, (1825.)
(*o*) Subsequently the cashier of the bank was
served with a subpœna duces tecum; but the court

on another ground refused to compel him to pro-
duce the books. Bank of Utica v. Hilliard, 5
Cow. 419, (1826;) La Faye v. La Faye Fire Ins.
Co. 6 Duer, 680; 14 How. Pr. 26.
(*p*) Section 869.
(*q*) Central, etc., R. Co. v. Twenty-third Street
R. Co. 53 How. Pr. 45.

whose custody" they are. It is important to note that this law does not require the officer of the corporation to obtain the custody of the books in order to produce them, but simply to produce them if they are in his custody. Therefore it seems that he is not compelled to bring them into court where they are not so under his power and control that, of his own will, and without obtaining the consent of others, he can take them and bring them into court. In one case, a corporation formed under the laws of Illinois had its general office at Chicago, where its president resided. It had a branch office in New York for the transaction of business there, which was in charge of the vice-president, who was also the secretary of the corporation. There was an assistant secretary at Chicago, who was a co-ordinate officer with the secretary, and not under his control. By a by-law of the company, the secretary was required to keep the books, accounts, and papers of the company; and books of stock transfers, etc., which were kept in New York, were required, when no longer in use, to be sent to the general office of the company in Chicago, and were in the charge of the officers there. It was held that after such books were sent by the secretary in New York to Chicago, they were no longer in the custody of that officer, and he could not be required to produce them by *subpœna duces tecum* under this law.(*r*)

§ 17. Party Refusing to Obey Writ Liable to Action. A person who is served with a *subpœna duces tecum* to produce papers in his possession at the trial of a cause, and failing to do so, in consequence of which the party in whose favor the evidence was to be used, fails in his cause, is liable to said party for the damages resulting from this failure of evidence, unless he can show some legal excuse for not obeying the writ.(*a*) The leading case establishing this principle is *Amey* v. *Long.*(*b*) The plaintiff, Amey, having obtained judgment against one G., sued out a *testatum fieri facias* to levy the sum recovered, directed to the sheriff of Surrey. The writ was returned *nulla bona,* and Amey brought an action against the sheriff for a false return. The warrant from the sheriff to levy on G.'s goods had been directed to Long, a sheriff's officer. To compel the production of the warrant at the trial against the sheriff, the plaintiff sued out a *subpœna duces tecum,* directed to Long, commanding him to produce the said warrant granted to him by the sheriff of Surrey upon the writ of *fi. fa.* against G. At the trial, Long appeared as a witness, but would not produce the warrant, and in consequence the plaintiff was nonsuited, and was obliged to pay costs, amounting to £132. He brought an action against Long and recovered this £132. If it is the non-production of the papers that has caused the party's evidence to fail, the witness will be liable, even though he obeyed the subpœna in other respects, as by personally appearing and giving oral evidence in the cause.(*c*) It is not necessary to sustain such an action for the plaintiff to prove that he had a good cause of action in the suit wherein the defendant was subpœnaed. It is sufficient for him to show that he was nonsuited in consequence of the non-production of the papers mentioned in the subpœna.(*d*) In an action against a sheriff's officer, who had been subpœnaed in a former action by the plaintiff against another

(*r*) United States v. Tilden, 18 Alb. L. J. 416
(*a*) Amey v. Long, 9 East, 473; 1 Camp. 11; Lane v. Cole, 12 Barb. 680.
(*b*) 9 East. 473; 1 Camp. 14.
(*c*) Lane v. Cole, 12 Barb. 630.
(*d*) Id.

person, to produce the warrant under which he acted, but had neglected to do so, whereby the plaintiff was nonsuited, it was held that the officer's ability to produce the warrant, and his want of excuse for not producing it, were sufficiently alleged in the declaration, which stated that he could and might, in obedience to the said writ of subpœna, have produced at the trial the said warrant, and that he had no lawful or reasonable excuse or impediment to the contrary.(e)   It is not a preliminary objection to such an action that the defendant had sworn, at the trial at which he was ordered to produce the document, that he had not the warrant in his possession and knew nothing of it.(f)                                   JOHN D. LAWSON.

*St. Louis, Missouri.*

(e) Amey v. Long, 9 East, 473.                     (f) Amey v. Long, 1 Camp. 14.